THE ATLANTIC EXPRESS COMPANY v. THE WILMINGTON AND WELDON RAILROAD COMPANY AND THE RICHMOND AND DANVILLE RAILROAD COMPANY.

*Railroad Commission, Powers and Duties of, under the Act to Regulate Freight and Passenger Rates—Constitution—General Assembly—Court of Record—Penalties—Procedure.*

1. The General Assembly may, without delegating its law-making power, establish a Commission with authority to fix reasonable rates and tariffs for railroads, prevent unjust discriminations and exercise a reasonable supervision and control in other matters subject to the right of appeal to the courts, and the act of Assembly creating the Railroad Commission is valid and constitutional.

2. Indictment and prosecution in the courts of ordinary jurisdiction is not the only remedy provided for the infraction of section 4 of the act establishing the Commission; section 5 expressly confers upon the Commission authority to make rules and regulations to prevent such infraction.

3. The General Assembly has power to confer judicial powers upon the Commission under Article IV., section 2 of the Constitution expressly authorizing the establishment of such courts inferior to the Supreme Court as the Legislature may deem proper, and under Article IV., section 12, it has power to "allot and distribute" the "jurisdiction" of such courts.

4. An act giving authority to the Commission to prescribe rules and regulations for the government of railroads, and providing that, upon failure of any railroad company to make full and ample recompense for the violation of such rules and regulations, the Commission should be entitled to proceed in the courts, after notice, to enforce the penalties to be prescribed therein, for such violation is valid without providing in detail the methods of procedure.

5. A railroad company is not compelled to furnish express facilities to another *to conduct an express business over its road* the same as it provides for itself or affords to any other express company. Section 4 of the Commission Act, forbidding discrimination against any other corporation, etc., respecting any species of traffic, is merely declaratory of the common law, and does not enlarge its scope.

6. The refusal of the defendants to provide the plaintiff with the express facilities sought, is no violation of *Rule* 8, adopted by the Commission: "No railroad company shall, by reason of any contract with any express or other company, decline or refuse to act as a common carrier to transport any articles proper to be transported by the train for which it is offered."

7. Discussion by SHEPHERD, C. J., of the rights and duties of common carriers, and of the scope and purpose of the Commission Act, with some suggestions of defects.

This PROCEEDING was heard at April Term, 1892, of the Superior Court of WAKE County, before *Connor, J.,* upon an appeal from the Railroad Commission.

The Court rendered the judgment, which appears in the record, and the plaintiff excepted to said judgment and appealed to the Supreme Court.

The pleadings, facts found by Commissioners, judgment of Commissioners, judgment of Court and plaintiff's exception constitute case on appeal.

The plaintiff complains and alleges—

1. That it is a corporation duly incorporated under and by virtue of the laws of the State of North Carolina, passed by the General Assembly at its session of 1891, under the name of the Atlantic Express Company, by an act ratified March, 1891.

2. That the defendants are corporations respectively, carrying on and conducting a general railroad business for conveying freight and passengers within and beyond the boundaries of the State of North Carolina, duly incorporated respectively, under the names of the Wilmington and Weldon Railroad Company and the Richmond and Danville Railroad Company.

3. That plaintiff, by its charter, is duly authorized and empowered to receive for carriage and delivery all goods, chattels, wares, merchandise, or things of value whatsoever, and make and enter into any contract for the purpose of procuring the transportation and delivery of the same in the State of North Carolina, or any other State or Territory in the United States as may be allowed by the laws thereof, and to do a general express business.

4. That plaintiff is duly organized under the provisions of its charter, and duly informed defendants of such organization and incorporation, and in pursuance to the objects of its incorporation, and for the transportation of such packages and articles as might be received by it for such purpose, it duly communicated with (by written- requests as well as by personal interviews of its agents) the defendants respectively, requesting said railroad companies to furnish it with a car or carriage over its line and rates of transportion, as well within as without the limits of the State, for the shipment of goods within the scope of its organization.

111—30

5. That in response to such requests and appeals, said defendants respectively, unjustly and unlawfully failed and refused to furnish this plaintiff with any car or other facility for transporting its said goods, as well as rates for such transportation, and as reasons for such neglect and refusal, defendants respectively inform this plaintiff, (1) that they have no car, carriage or facility which they could place at the disposal of plaintiff for the purpose named; (2) that they could make no rates for such transportation, for that they had respectively granted the exclusive privilege of such carriage to the Southern Express Company, and that they had entered into an exclusive contract with such company as to the rates thereof.

6. That said Southern Express Company is a corporation duly incorporated for the purposes of a general express business of like nature and kind in all respects, and of the same particular description of traffic as the plaintiff, as it is advised and believes.

7. That in the manner aforesaid, the defendants respectively have given undue and unreasonable preference and advantage to said Southern Express Company, in the granting of the exclusive privileges and rights as aforesaid, to the unreasonable prejudice of this plaintiff, whereby it is entirely excluded and prevented from effectuating and carrying out the objects and intents of its charter and organization.

Wherefore, it prays that this Court will accord it such relief in the premises as in justice and equity it may be entitled to.

The defendant, the Richmond and Danville Railroad Company, in answer to the complaint filed in this proceeding, says:

1. It admits allegation No. 1.

2. It admits allegation No. 2.

3. It denies, upon information and belief, the allegation in No. 3 that it has power "to do a general express business."

4. This defendant, in answer to allegation No. 4, admits that it declined to "furnish a car or carriage over its line, and rates of transportation, as well within as without the limits of North Carolina, for shipment of goods within the scope of its organization."

5. It admits that it did refuse to give to plaintiff a car or carriage: (1) because previous to the year 1890, and before the Act of the Legislature of North Carolina, chapter 320, commonly known as the Railroad Commission Act, had been ratified, the defendant had entered into a contract with the Southern Express Company, whereby it gave said company "the exclusive right to the express business on its line," which contract, the defendant is advised and believes, it had the power to make, and that the same was not in contravention of any general law or statute of the State of North Carolina, or of any usage which might be recognized as having the force of law. This defendant is further advised and believes that the Legislature of North Carolina has not attempted or intended by any subsequent statute to impair the obligation of this solemn contract, and if it had so attempted, that such statute or law would be in violation of the Constitution of the United States.

2. Because it had no express car suitable for the business of the plaintiff, and in the management and control of its business, which is vested, subject to law, in the defendant by its charter, it is advised and believes that it is not bound to incur the expense of purchasing said car.

6. In answer to allegation No. 6, this defendant says it has no knowledge nor sufficient information on which to form a belief so as to categorically answer the same, but is willing to admit that both are express companies with the usual powers appertaining to such companies.

7. This defendant denies allegation No. 7 of the complaint.

8. For further defence, this defendant says: (1). That it is advised and believes that "it performs its whole duty to

the public at large and to each individual when it affords the public all reasonable express accommodations. If this is done, the railroad company owes no duty to the public as to the particular agencies it shall select for that purpose. The public requires the carriage, but the company may choose its own appropriate means of carriage, always provided they are such as to insure reasonable promptness and security." Express Cases, 117 U. S. Reports, pp. 24–25. This defendant avers that through the Southern Express Company "reasonable accommodations" for the carriage of express freight over its lines is afforded to the public and individuals. (2). This defendant further avers, that if it were compelled to give express privileges, such as are demanded by plaintiff, to all express companies, it would greatly "interfere with the wants of its passengers" on its passenger trains, to which express cars must necessarily be attached. This defendant is advised that "the express business on passenger trains is in a degree subordinate to the passenger business, and it is consequently the duty of a railroad company in arranging for the express to see that there is as little interference as possible with the wants of passengers." Express Cases, p. 24.

This defendant is further advised and believes, "that there is nothing in any statute of North Carolina which in *positive* terms requires a railroad company to carry *all* express companies in the way that under some circumstances they may be able to, without inconvenience to carry *one* company." Express Cases, p. 27.

That without this positive enactment the duty does not devolve on this defendant to grant transportation over its lines to *all* express companies.

9. This defendant is further advised that the demand of the plaintiff for "a car or carriage over the lines of this defendant, as well within as without the limits of the State," is a matter over which this honorable Commission has no

jurisdiction. That the State of North Carolina has no juris-
diction, through its Commission, to regulate interstate com-
merce, and has disclaimed such power in section 6 of the
Railroad Commission Act.

10. This defendant is further advised and believes, that
section 4 of the Railroad Commission Act does not forbid all
"preference or advantage," but only such as are "undue and
unreasonable," and this defendant says that from the very
nature of the plaintiff's demand it is not unreasonable to
refuse it. Because, on the same grounds, any other express
company might demand a similar "car" until the passenger
trains would be loaded down with freight, and the train
delayed. That after purchasing expensive cars for these
companies, competition would become destructive to them,
and the express cars would become idle, and the railroad
company would be the loser to the value of the cars. That
it would lead to an unseemly scramble among the various
express agents at defendant's stations and cause delay to the
trains and discord among the operatives, and involve the
railroad companies in numerous suits for delays and injuries.
It would, in fact, compel the railroad companies to refuse to
carry any express cars on its passenger trains, and thereby
deprive the public of this valuable service.

The demand is impracticable, and its concession would
defeat the very object for which express companies were
chartered, and greatly inconvenience the public.

The whole question is so ably discussed in all its phases
by the Chief Justice of the Supreme Court of the United
States in the "Express Cases," that it seems a work of super-
erogation to enlarge further upon it.

The defendant, the Wilmington and Weldon Railroad
Company, answering the complaint filed herein, says:

1. It admits that the allegations contained in paragraph 1
of the complaint are true.

2. It admits that the allegations contained in paragraph 2 of the complaint are true.

3. It is informed and believes that the allegations contained in paragraph 3 of the complaint are true as therein stated, except the allegation that the plaintiff, by its charter, is duly authorized and empowered " to do a general express business," and therefore denies the said allegation.

4. The allegation contained in paragraph 4 of the complaint may or may not be true, but this defendant is not advised as to the organization of said complainant company, and calls for proof thereof if this defendant is to be affected thereby, but this defendant denies that any request was ever made for a car or carriage over its line by said complainant, as stated in paragraph 4.

5. It denies the allegation contained in paragraph 5 of the complaint as therein stated. This defendant never refused to transport over its line any article offered by the complainant. On the 22d day of May, A. D. 1891, the secretary of the complainant company wrote the following letter to the Superintendent of this defendant:

" We respectfully ask you to give us rates over your roads for the Atlantic Express Company, with messenger service privileges."

To which this defendant, by its President, on the 9th day of June, A. D. 1891, made the following reply:

" Your communication to the General Superintendent of the Wilmington and Weldon Railroad Company, and to the Superintendent of the Petersburg Railroad Company, requesting them to give your company rates over their respective roads, with messenger service privileges, have both been referred to me. The car space that can be given to the express business on our passenger trains is, of course, limited, and it is now occupied to its full limit by the Southern Express Company."

Further answering the allegations of paragraph 5 of the complaint, this defendant says that prior to the passage of the

act of the Legislature of North Carolina, chapter 320 of the Laws of 1891, commonly known as the "Railroad Commission Act," to-wit, in the year 1885, it had entered into a contract with the Southern Express Company, whereby it contracted that, for the promotion of mutual and public interests, all manner and character of freight business, which, in the judgment of this defendant, can with safety be transported on its passenger trains, shall have accommodation thereon, and be in the sole custody and direction of the said Southern Express Company, and that said contract is now in full force and effect, and has been ever since it was entered into in the year 1885. And this defendant is advised that said contract is lawful and of full force and effect, and not obnoxious or repugnant to the Constitution and laws of the State of North Carolina or of the United States.

6. It admits that the Southern Express Company is a corporation duly incorporated for the purpose of a general express business.

7. It denies the allegation contained in paragraph 7 of the complaint.

Wherefore, it prays to be hence dismissed with its reasonable costs, etc.

This cause, coming on upon the pleadings, the judgment of the Railroad Commission of North Carolina, and the defendants' exceptions thereto, and the Court being of opinion that the defendants were not required under the common law, or under the requirements of *The Code*, §§ 1963 and 1964, or under the provisions of a law establishing a Railroad Commission, or under the rules and regulations of the Commission, to furnish to the plaintiff company the facilities demanded in the complaint. (The other questions arising upon the pleadings and exceptions not being considered by the Court).

Hereupon it is ordered and decreed that the action be dismissed, and that the defendants recover of the plaintiffs their costs and disbursements, to be taxed by the Clerk.

A copy of this order must be certified to the Railroad Commission. Notice of appeal by plaintiff accepted. Bond fixed at fifty dollars. Pleadings, judgment and exceptions constitute case on appeal. Time given plaintiff to file bond.

*Messrs. O. H. Guion* and *W. W. Clark,* for plaintiff.
*Messrs. A. W. Haywood* and *F. H. Busbee,* for defendants.

SHEPHERD, C. J.: Although we are of the opinion, for the reasons hereinafter stated, that the particular relief asked for in this proceeding is not authorized by the provisions of what is known as the "Railroad Commission Act," still we do not feel at liberty to ignore the important question of jurisdiction suggested in the answers of the defendants and the arguments of counsel. The question is a serious one, and involves in a great measure the efficiency of the legislation designed for the "supervision" of railroad companies, and other common carriers, in respect to the fixing of reasonable freight and passenger tariffs, the prevention of unjust discriminations and preferences, and the regulation of other matters pertaining to transportation within the State in which the public is deeply interested. That the Legislature has the authority to provide reasonable rules and regulations for the effectuating of such purposes is too well settled to admit of discussion (*Railroad* v. *Railroad,* 104 N. C., 673; *Railroad* v. *Iowa,* 94 U. S., 155; *Railroad* v. *Richmond,* 19 Wall., 584), and it is equally well settled that in delegating such authority to a commission it does not transcend its constitutional powers. *Stone* v. *Trust Co.,* 116 U. S., 307; 19 Am. and Eng. Enc. Laws, 686, and the numerous authorities cited in the notes. "The difference between the power to pass a law and the power to adopt rules and regulations to carry into effect a law already passed is apparent and great, and this we understand to be the distinction recognized strikingly by all the Courts as the true rule in determining whether or not in such cases a leg-

islative power is granted. The former would be unconstitutional, whilst the latter would not. *Georgia Railroad, etc.,* v. *Smith,* 9 Am. and Eng. R. R. Cases, 385.

A careful scrutiny of the act of Assembly constituting a "Railroad Commission" (Acts 1891, ch. 320), fails to disclose a purpose to confer upon that body anything in the nature of legislative power. The act, among other things, denounces excessive charges, unjust discriminations and preferences as unlawful, and invests the Commission with authority to "make such just and reasonable rules and regulations as may be necessary for preventing" the same—the reasonableness and legality of such rules and regulations being reviewable by the Courts. This power, as we have just seen, may be delegated to a Commission, and any objection on that ground is therefore untenable.

It is insisted, however, that the Commission has no jurisdiction to entertain and pass upon complaints made in respect to the violation of the provisions of section 4, and perhaps other sections of said act. That section declares that all unjust discriminations and preferences shall be unlawful, and it is urged that the only remedy provided against its infraction is by indictment, to be prosecuted in a Court of competent jurisdiction. It is very plain to us that the contention is without foundation, as in section 5 the authority of the Commission to make rules and regulations for the prevention of these very acts is expressly conferred. The subjects embraced in section four are perhaps the most important that are confided to the regulation of the Commission, and without reference to the plain language of the act, it is hardly to be supposed that the Legislature intended to insert therein a merely penal provision entirely independent of and unconnected with the duties imposed upon that body.

Neither is there any force in the argument that the Legislature cannot confer judicial powers upon the Commission,

as the Constitution (Art. IV., sec. 2) expressly authorizes the establishment of such Courts inferior to the Supreme Court as the Legislature may deem proper; and it is to be observed that the Commission has been "created and constituted a court of record" with all the "powers and jurisdiction of a court of general jurisdiction as to all subjects embraced in the act creating" the same.  Acts 1891, ch. 498

Whether a Court, having no power to enforce its judgments, fulfills the definition of a court of record and of general jurisdiction, is unnecessary to be considered.  It is sufficient to say that the Legislature has the authority to establish courts inferior to the Supreme Court, and to "allot and distribute" its jurisdiction "as it may deem proper." Const., Art. IV., sec. 12.  The question, then, is simply whether the power to hear and determine complaints of this character has been conferred, and this is easily solved by a perusal of section 10 of the said act, which is as follows: "That if any railroad company doing business in this State by its agent or employees shall be guilty of a violation of the rules and regulations provided and prescribed by said Commissioners, and if, after due notice of such violation given to the principal officer thereof, * * * ample and full recompense for the wrong or injury done thereby to any person or corporation, as may be directed by said Commissioners, shall not be made within thirty days from the time of such notice, such company shall incur a penalty for each offence of not less than fifty dollars nor more than five thousand dollars, to be fixed by the Judge of the Court in which such action shall be tried.  An action for the recovery of such penalties shall lie in any county of the State where such violation has occurred or wrong has been perpetrated, and shall be in the name of the State of North Carolina.  The Commissioners shall institute such action through the Attorney General or Solicitor of the Judicial District in which the violation has occurred," etc.

It must be noted that the present proceeding is not an action instituted by the Commissioners for the enforcement of penalties; nor is it, as suggested, an ordinary civil action for the recovery of damages as is provided in section 11 of the act. It is brought for the purpose of seeking "*ample and full recompense*" for the alleged "*wrong and injury*" done the complainant. The act looks beyond the mere infliction of a penalty for the violation of a rule or regulation, and evidently provides for specific redress in the premises. This redress is to be "*directed by said Commissioners*" upon due notice to the party complained of, and it is difficult to understand how the proper measure of relief can be ascertained except by examination of testimony. The necessary conclusion, therefore, must be that the Commission has the authority to hear and determine all matters that are embraced within that part of the said section to which we have referred.

No summons was issued in the present proceeding as in civil actions, but upon a complaint being filed the defendants were notified to "satisfy the complaint or answer the same" within thirty days. After hearing the testimony, the Commission declared in effect that the rule and regulation made pursuant to the law had been violated, and that "ample and full recompense" should be made by providing the complainant with the facilities mentioned in the order. It is insisted that as no procedure is provided, the Commission has no authority to make an order of this character. It is true that no particular rules of practice are prescribed, but the power to rehear and determine upon notice is, as we have seen, expressly given, and all necessary means are provided for the conducting of any inquiry which it is the duty of the Commission to make. Provision is made for the service of notices, the attendance of witnesses, and the punishment of contempts, and the rules of evidence are declared to be the same as in civil actions. It is also provided that there may be an appeal "as in other cases of appeal" from "all *decisions*

*or determinations* arising under the operation or enforcement" of the act. We cannot hold that with all of these facilities provided by law a power expressly granted to hear and determine is to be denied because the particular form of the complaint, or the manner in which the proceeding is to be entitled, or some other immaterial matter of detail, is not particularly prescribed. Besides, such details may well be supplied by the Commission under the inherent power of every court of record to make such rules, not inconsistent with the law, as are necessary to the exercise of the powers conferred upon them. 4 Am. and Eng. Enc., 450, and the cases cited.

It must be admitted, however, that in many respects the act is singularly obscure and confused. It bears the impress of hasty legislation, and seems to be composed of parts of other acts of a similar character, united with but little regard to order or perspicuity. Its amendment, in many particulars, may well be considered by the law-makers. Among its defects we find the strange omission of any provision in section 10 as to the effect to be given to the determination of the Commissioners, in an action brought in the Superior Court for the enforcement of the penalties prescribed. Whether, in the absence of an appeal, such a determination is conclusive, or whether it simply amounts to a *prima facie* case, are questions left in very great doubt. This, however, cannot affect the right to hear and determine what recompense shall be made to an injured party. The power is expressly conferred, and it is the duty of the Commission in all proper cases to exercise it. . The effect of such a determination, when brought before the Courts, is quite another thing. We are, therefore, of the opinion that the Commission has ample authority to entertain and pass upon complaints for a violation of any rule or regulation respecting the matters embraced within section 4 of the said act.

2. Having disposed of the question of jurisdiction, we will now inquire whether the present complainant is entitled to .

the particular relief which it seeks in this proceeding. It must be borne in mind, in considering this case, that there is no complaint that the public, that is, the demands of persons who desire to ship express freight, are not fully met and supplied. The controversy is solely between the respective corporations, and the real question is not whether the defendant railroad companies are authorized to do an express business for themselves, nor whether they must carry express matter for the public on their passenger trains, in the immediate charge of some person specially appointed for that purpose, nor whether they shall carry express freight for the complainant company as they carry like freight for the general public, but whether it is their duty to furnish the complainant with facilities for doing an express business upon their roads, the same in all respects as those they provide for themselves or afford to any other express company. That this is a proper statement of the question is apparent from the application of the complainant and the findings of the Commission. It distinctly appears that the complainant made no actual tender of any article of freight to be transported by the defendants, but that it demanded "rates and facilities for *conducting* an express business over their roads in this State," and that each of the defendants "should furnish it with a car or carriage over its respective lines, and rates of transportation as well within as without the limits of the State, for the shipment of goods within the scope of its organization." It is not insisted that the defendants have ever held themselves out as common carriers of express companies, "that is to say, as common carriers of common carriers" (Express Cases, 117 U. S., 1), and the chief point to be determined is whether, in the absence of such a usage, the law imposes a duty of that character upon them. It is contended that such a duty is imposed by the following provision of section 4 of the act constituting the Commission: "That it shall be unlawful for any common carrier, subject

to the provisions of this act, to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

We are of the opinion that the foregoing provision does not change or enlarge the common law duty which the defendants owe the complainant. That constitutional provisions, in almost the same language, have been construed but as declaratory of the common law, is shown by various authorities..

The Constitution of Colorado declares " that all individuals, associations, etc., shall have equal rights to have persons and property transported over any railroad in this State, and no undue or unreasonable discrimination shall be made in charges or facilities for transportation of freight or passengers within the State."

The Constitution of Kansas provides "that no discrimination in charges or facilities in transportation shall be made between transportation companies and individuals, and no railroad company shall make any discrimination or preference in furnishing cars or motive power."

The Constitution of Arkansas provides " that all individuals and corporations shall have equal rights to have persons and property transported over railroads, * * * and no undue or unreasonable discrimination shall be made in charges or facilities in transportation."

The Constitution of Missouri provides " that no discrimination in charges or facilities in transportation shall be made between transportation companies and individuals, or in favor of either by abatement, drawback or otherwise, and no railroad company * * * shall make any preference in furnishing cars or motive power."

In speaking of these constitutional provisions, WAITE, C. J., says: " These provisions impose no greater obligations than the common law would have imposed without them." *Atchison Railroad* v. *Devon*, 110 U. S., 667. This high authority settles the question that our Railroad Commission Act does not extend the common law duty; and it therefore becomes material to inquire whether, at common law, the defendants owed the complainant the duty sought to be imposed in this proceeding.

The Supreme Court of the United States, in the Express Company cases (*supra*), has answered the question. It declares that " in the absence of some special statute, there is no law which requires railroads to furnish express facilities to all express companies which may demand them." It must be noted that these cases came from the States of Colorado, Kansas, Arkansas and Missouri ; and it is in the light of the constitutional provisions above quoted that this and the following language of the Chief Justice is used : " The railroad companies perform their whole duty to the public at large and to each individal when it affords the public all reasonable express accommodation. If this is done, the railroad company owes no duty to the public, as to the particular agencies it shall select for that purpose. The public requires the carriage, but the company may choose its own appropriate means of carriage, always provided they are such as to insure reasonable promptness and security." * * * " The Constitution and laws of the States in which the roads are situated place the companies that own and operate them on the footing of common carriers, but there is nothing which, in positive terms, requires a railroad company to carry all the express companies in the way that, under some circumstances, they may be able, without inconvenience, to carry one company. * * * In some of the States statutes have been passed which, either in express terms or by judicial interpretation, require railroad companies to furnish equal

facilities to all express companies (as in Maine and New Hampshire), but these are of comparative recent origin, and thus far seem not to have been generally followed."

In view of the foregoing authorities we are of the opinion that so much of the order of the Commission as determines that "the refusal of the defendants to grant to the plaintiff facilities for conducting an express business was a violation of the terms of said act," is not warranted by the statute under consideration.

The judgment of the Commission, however, also declares that the defendants have violated Rule 8 of the "regulations concerning freight rates." The rule is as follows:

"No railroad company shall, by reason of any contract with any express or other company, decline or refuse to act as a common carrier to transport any articles proper for transportation by the train for which it is offered."

We are unable to see, that in view of the facts found, there has been any violation of this rule. No duty is imposed by the rule upon any railroad company, but it merely prohibits the refusal to perform a duty by reason of any contract with an express or other company. We have seen that the defendants did not owe any duty to act as a "common carrier of express companies." Had they owed such a duty we are very sure that they could not have avoided its performance because of their having made an exclusive contract with the Southern Express Company. We do not think, however, that the rule applies to this case. The defendants have not refused to act as a common carrier, or to transport any article tendered by the complainant. They have refused to afford it facilities for carrying on an express business upon their roads, and this we have seen they had a right to do. In this refusal they were not guilty of making any discrimination or preference within the act of the Legislature. As we have seen, the Supreme Court of the United States has said that they are under no obligation to carry another company, and

the mere fact that they are carrying another company does not amount to an unjust or unreasonable preference. It is the duty of the defendants to carry express matter, but they may carry it themselves or employ competent agencies for that purpose. Express Co. Cases, 29 Am. and Eng. Railroad Cases, and the authorities cited in the notes. The Supreme Court of the United States, in deciding the cases just referred to, stated that " railroad companies are, by law, carriers of both persons and property. Passenger trains have, from the beginning, been provided for the transportation primarily of passengers and their baggage. This must be done with reasonable promptness, dispatch and comfort to the passengers. The express business on passenger trains is, in a degree, subordinate to the passenger business, and it is, consequently, the duty of a railroad company, in arranging for the express, to see that there is as little interference as possible with the wants of the passengers. This implies a special understanding and agreement as to the amount of car space that will be afforded, and the condition on which it will be occupied. The space that can be given to the express business on a passenger train is, to a certain extent, limited. * * * If the general public were complaining that the railroad companies refused to carry express matter themselves on their passenger trains, or allow it to be carried by others, different questions would be presented." The same remark is applicable if the agencies adopted by the railroads (in this case the Southern Express Company) are not affording the public sufficient facilities. It is further to be observed that the power to fix rates and tariffs for such agencies is conferred upon the Commission by section 13 of the act. We will also observe that if the defendants had held themselves out as common carriers of express companies, they would have been guilty, in this case, of discrimination, or the giving of a preference, and, therefore, subject to the regulation of the Commission, had that body declared such

111—31

discrimination or preference, under the circumstances, to have been " unjust " or " unreasonable."

In view of the facts found by the Commission, and of the high authority we have cited, we are of the opinion that the defendants have violated no duty imposed by the law. If other duties are to be imposed, it must be by further legislation, and not by the Courts. " To what extent it must come, if it comes at all from Congress, and to what extent it may come from the States, are questions we do not now undertake to decide; but that it must come, when it does come, from some source of legislative power, we do not doubt. The Legislature may impose a duty, and when imposed it will, if necessary, be enforced by the Courts; but unless a duty has been created, either by usage or by contract, or by statute, the Court cannot be called upon to give it effect." WAITE, C. J., 117 U. S., 1 to 34.

The judgment below is

Affirmed.