The substance of the complaint was that Mr. Albea had applied to the agent of the defendant at Elizabeth City about 1 December, 1891, for the transmission of a message, consisting of not more than ten body words, from Elizabeth City to Winston, N.C. and tendered to the agent twenty-five cents for said service. The agent demanded sixty-five cents for the service, and refused to transmit the message unless Mr. Albea should pay that amount, which he refused to do.
The plaintiff prayed that the defendant might be required to answer the charges of the complaint, and for an order commanding the defendant to desist from further violations of the law.
The plaintiff did not ask for any recompense.
The defendant filed answer on 17 May, 1892, denying that it was engaged, at the time mentioned in the complaint, or is now engaged, in the transmission of telegraphic messages between Elizabeth City and Winston, or that it was subject to the act of the General Assembly creating the commission. It also alleged that another corporation, under the name of the Elizabeth City and Norfolk Telegraph Company, was engaged in the transmission of messages upon a line extending from the town of Edenton and through the said town of Elizabeth (215) City in said State to the towns of Portsmouth and Norfolk in the State of Virginia; that the said line was, at the time mentioned in the complaint, and is now, operated and controlled exclusively by the said Elizabeth City and Norfolk Telegraph Company, and that the last named company was not then, and is not now, operated by or under the control of the defendant; that the agent to whom the plaintiff made tender of fare was not the agent of the defendant; that the only relation between the defendant and the Elizabeth City and Norfolk Telegraph Company is shown by the contract, which was filed as a part of the answer; that there was then, and is now, no way of transmitting a message from Elizabeth City to Winston except through the said line from Elizabeth City to Norfolk, Virginia, and the shortest way by which said message could be transmitted was through the city of Richmond, in the State of Virginia, by which it would necessarily traverse a route through said State; that the defendant had violated no law of the State, nor any rule or regulation of the commission, and that the matter being one of commerce between the States, the commission had no jurisdiction thereof.
The commission heard evidence, and made a finding of facts, upon which it made the following conclusions and order: *Page 158 
"1. That the office at Elizabeth City, to which the plaintiff applied for the transmission of a message to Winston, was and is an independent office, and that the defendant is not responsible for the act of the operator in refusing to transmit the message as alleged in the complaint.
"2. That the telegraphic offices at Edenton and Elizabeth City, and at other points in North Carolina on the line of the Norfolk and Southern Railroad, are under the control of the defendant, and that the (216) operators in said offices, although employed by the said railroad company, are the agents and operators of the defendant, and that it is their duty to transmit commercial messages when tendered to them to points in North Carolina at the rate prescribed by the commission.
"3. That telegraphic messages transmitted by the defendant over its said line from Elizabeth City or Edenton, or other points in North Carolina, to points in said State, do not constitute commerce between States, although traversing another State in the route, and are subject to the rate prescribed by the commission.
"Therefore, it is adjudged that the plaintiff is entitled to no recompense from the defendant, but the commission is of the opinion, and doth so order and adjudge, that the telegraphic offices at Edenton and Elizabeth City, and at other points on the Norfolk Southern Railroad in North Carolina, are offices of the defendant, and that said offices shall transmit commercial messages at the rate prescribed by the commission, when tendered, to any point in North Carolina.
"This order shall take effect on and after 20 August next."
From the judgment in this case the defendant prayed an appeal to the next term of the Superior Court of Wake County, which was granted.
Upon the hearing of the appeal at February Term, 1893, of Wake Superior Court, before Brown, J., it was agreed that the court, instead of a jury, should find the facts, if the court should be of the opinion that the findings of the Board of Railroad Commissioners were not binding upon the Superior Court.
His Honor being of the opinion that said facts were not binding upon the court, made the following findings of fact from the evidence taken by the commission:
"It appears that the board of railroad commissioners adjudged that Albea, the plaintiff, was entitled to recover nothing, and that the appeal of the defendant is from the order of the board making a (217) regulation to go into effect 20 August. It is therefore unnecessary to set out the facts as to the relation of said Albea to the case. The findings and ruling of the board, so far as Albea is concerned, are not excepted to. The court further finds as matter of fact *Page 159 
that the defendant is a corporation operating and owning an extensive system of telegraphy throughout the United States and the State of North Carolina; that the defendant owns, controls and operates a line of telegraph from Edenton, N.C. passing through Elizabeth City, N.C. Hertford and other places along the track of the Norfolk and Southern Railroad to Berkley, Va., and Norfolk, Va.; that there is a contract in writing between defendant and said Norfolk and Southern Railroad in respect to the maintenance and operation of said telegraph line, which is set out in the records in this case and is made a part of these findings; that the defendant company receives and transmits over this line messages at the towns and villages of Hertford, Moyock and other places along said line, to any place in North Carolina where it has an office, at the uniform rate of twenty-five cents per message of ten words, except at Edenton and Elizabeth City; that such messages received at Hertford, Moyock and other places are sent over the wires of defendant leading into Virginia and back into North Carolina; that the rate adopted by defendant at Hertford, Moyock, etc., along said line was in obedience to the order of the Board of Railroad Commissioners, which went into effect 1 June, 1891, set out in the findings of the board in the record; that there is a line of telegraph erected along the public county roads from Edenton, N.C. through Hertford and Elizabeth City, to Norfolk, Va., owned by the Elizabeth City and Norfolk Telegraph Company, with offices on said line only at Edenton and Elizabeth City, N.C.; that this line does business with the defendant company through a traffic contract dated 19 April, 1880 (Exhibit A), and renewed 19 April, 1890, for five years (said contract is set out in the record and is made a part of these findings); that the (218) shortest and only route over the wires of defendant by which messages can be now transmitted from Elizabeth City and all points along the Norfolk and Southern Railroad, traverses, in part, the State of Virginia, and thence back into North Carolina; that the wires of defendant now used in the transmission of this business are those leading to Norfolk via Richmond back into North Carolina; that this route now used by the defendant in transmitting messages from its offices on the Norfolk and Southern Railroad to Winston, N.C. is the shortest and best route between those points, and traverses about 269 miles in Virginia. Findings Nos. 2 and 3 of the board are approved. The charges made by the Norfolk and Elizabeth City Telegraph Company for messages from Edenton and Elizabeth City to points in North Carolina are much greater than the rates fixed by the commissioners, which rate is observed by defendant at Hertford, N.C. Moyock and Centreville, towns within a short distance of Elizabeth City and in North Carolina. That the defendant has not opened an office at Edenton and *Page 160 
Elizabeth City for commercial business solely because of its contract with the Elizabeth City and Norfolk Telegraph Company, set out in the record, the defendant's officers believing that to do so would be an act of bad faith. Defendant has a continuous line from Edenton and Elizabeth City to Winston, N.C. and if its offices in those two towns were opened for commercial business, messages could be transmitted direct to Winston. Defendant has a railroad office on its wire at Elizabeth City and Edenton, and the right, so far as the Norfolk and Southern Railroad is concerned, to take commercial business. That such railroad business as train reports would have preference to transmission, but the court does not think, from the evidence, that commercial business would be unusually or unreasonably delayed — possibly, in some cases, a half hour or so as testified to by defendant's agent, Pamplin; that there are offices upon defendant's wire at Elizabeth City and (219) Edenton, operated by operators paid by the Norfolk and Southern Railroad Company, and the same arrangement between the defendant and the said company at Moyock, Hertford and Centreville. These operators are also agents of the defendant, and do commercial business for defendant and comply with the regulations and rates fixed by the board at the last three towns. Findings Nos. 4 to 12, inclusive, are approved. The present telegraph office at Elizabeth City on defendant's wire is at the depot, about a half or three-quarters of a mile from the central part of the town; but, at the rate fixed by the board and charged by the defendant elsewhere, the court is of the opinion that the defendant would get nearly all the business, even if it used the present office at the depot. That the taking of commercial business over defendant's wire at Elizabeth City and Edenton at the rates established by the commissioners will necessarily injure the Elizabeth City and Norfolk Telegraph Company very materially, but will greatly benefit those communities and not injure the defendant. In respect to rates, those towns would then be put upon an equality with the neighboring towns hereinbefore referred to."
His Honor thereupon affirmed the order of the commission, and defendant appealed.
The Board of R. R. Commissioners is "authorized and required to make or cause to be made just and reasonable rates of charges for the transmission of messages by any telegraph line or lines doing business in the State." Laws 1891, ch. 320, sec. 26. It may cause notice to be served upon corporations or persons charged with a *Page 161 
violation of the rules prescribed by it in pursuance of the above authority, and upon a hearing, may ascertain and direct ample and full recompense to be made by the company, corporation or (220) person offending, which recompense may be enforced by civil action, as prescribed in section 10 of said act. Mayo v. Telegraph Co.,112 N.C. 343. It is a court of record, with "the powers and jurisdiction of a court of general jurisdiction," as to all subjects embraced in said act, by virtue of Laws 1891, ch. 498. Express Co. v. R. R.,111 N.C. 463.
The defendant being served with process appeared before this Court to answer the complaint or petition of Eugene Albea, called plaintiff herein, and filed its answer. Thereupon a trial was had, and it appearing that the said Albea, having tendered no commercial message to any of the offices of the defendant, it was adjudged that he had no cause of complaint, and the proceeding was practically dismissed as to him. The commission, however, having the defendant before it, proceeded under its general powers to make rates of charges for the transmission of business by the defendant from and to points in North Carolina, which rate of charges is the same as that applicable to all the offices of the defendant within the limits of the State. The commission, after having disposed of the complaint of Albea, should have amended the proceeding so as to substitute as complainant the "State of North Carolina ex rel. the Railroad Commission"; but as it has been fully heard without reference to this irregularity, we have ordered that the amendment be now made, and the proceeding be entitled accordingly. The Code, sec. 273; Reynolds v. Smathers, 87 N.C. 24.
The order of the board, which is the subject of review, is as follows: "That the telegraph offices at Edenton and Elizabeth City and at other points on the Norfolk and Southern Railroad in North Carolina are offices of defendant, and that said offices shall transmit commercial messages at rates prescribed by the commission to any point in North Carolina." This order is based upon certain findings of fact, (221) some of which are excepted to. But inasmuch as it was agreed that his Honor might pass upon these questions in the place of a jury, and as there was evidence sufficient to warrant such findings as under the view we have taken are material to be considered, they cannot be reviewed in this Court. Battle v. Mayo, 102 N.C. 413; Fertilizer Co.v. Reams, 105 N.C. 283.
It appears, in the language of his Honor, "that the defendant owns, controls and operates a line of telegraph from Edenton, N.C. passing through Elizabeth City, N.C. Hertford, Moyock, N.C. and other places along the track of the Norfolk and Southern Railroad to Berkley and Norfolk, Virginia. . . . That the company receives and transmits *Page 162 
over this line (commercial) messages at the towns and villages of Hertford, Moyock and other places along said line to any place in North Carolina, where it has an office, at the uniform rate of twenty-five cents per message of ten words, except at Edenton and Elizabeth City," at which two last named offices the defendant receives no commercial business, the said offices being devoted exclusively to the business of the Norfolk and Southern Railroad Company in respect to the running of its trains, etc.
It is very clear to us that under the authority given it to make rates for "the transmission of messages by any telegraph line or lines doing business in the State," the commission (subject, of course, to the right of appeal) has the incidental power of ascertaining what particular corporation is at least in the control or operation of the same. This would seem indispensably necessary to a proper exercise of its authority to fix rates as well as to know against whom to proceed under section 10 of the act, in the event of a violation of such regulation. The exception in this respect, therefore, must be overruled.
A more serious question, however, is presented by the ruling of the court upon the third conclusion of the commission, which is as follows: "That telegraphic messages transmitted by defendant over its said line from Elizabeth City or Edenton, or other points in North (222) Carolina to points in said State, do not constitute commerce between States, although traversing another State in the route, and are subject to the rate prescribed by the commission." It appears from the findings of fact that the shortest and only route over the wire of the defendant by which messages can be transmitted to many points in this State, necessarily "traverses, in part, the State of Virginia and thence back into North Carolina," and it is insisted that such messages so transmitted are interstate commerce, and therefore not subject to the tariff regulation of the commission.
It is not denied that the offices of the defendant along the line of the Norfolk and Southern Railroad Company, except those at Edenton and Elizabeth City, receive commercial messages for transmission, in the manner described, to various points in North Carolina, and it is plain that such business does not relate to the intercourse of the citizens of this State with those of some other State. It is purely an intercourse between the citizens of North Carolina through the means afforded by a corporation having extensive facilities of communication within the limits of the said State, and the uniform rates fixed by the commission for the business, which the said corporation accepts, or is under legal obligation to accept, in no wise affects or interferes with any business which the defendant undertakes for the citizens of Virginia, either between themselves or with the citizens of other States. Neither are we *Page 163 
able to see how the mere fixing of rates between different points in this State can in any way conflict with any regulation which the State of Virginia may have the power to impose in respect to its domestic business. It must be manifest, therefore, that this business is without a single feature of interstate commerce, unless it can be found in the fact that in the transmission of a message it must traverse a part of the defendant's own line in the State of Virginia. We have been referred to several cases in which it has been held, in respect to the (223) continuous carriage of freight by a railroad company under such circumstances, that a State commission had no power to prescribe rates, and also that a State had no right to levy a tax upon the gross receipts, even as to that part derived from the transportation within its territory.S. v. R. R., 40 Minn. 266; Sternberger v. R. R., 29 S.C. 510; CottonExchange v. R. R., 2 Interstate Commerce Reports, 386.
Without attempting to discuss these cases, and to distinguish them in some particulars from ours, it is sufficient to say that if they are not distinctly overruled, their principle is certainly in conflict with the reasoning of the opinion of the Supreme Court of the United States (Fuller,C. J.,) in R. R. v. Pennsylvania, 145 U.S. 192.
The State of Pennsylvania levied a tax on the gross receipts of all railroad companies derived from the transportation by continuous carriage from points in Pennsylvania to other points in the same State — that is to say, passing out of Pennsylvania into other States and back again into Pennsylvania in the course of transportation.
The Lehigh Valley Railroad Company has no road of its own from Mauch Chunk, Pennsylvania, to Philadelphia, but in transporting its coal and general freight traffic it uses its own line from Mauch Chunk to Phillipsburg, New Jersey, from which point it is, under an arrangement for a continuous passage with the Pennsylvania Railroad Company, transported by the latter road via Trenton to Philadelphia. It was insisted that the State could not tax that part of the gross receipts derived from so much of the transportation as was wholly within the State of Pennsylvania, because the freight, during its entire transportation, was impressed with the character of interstate commerce. The court sustained the tax, and although it may be said that the decision relates only to that part of the receipts which arose from the transportation within the State, yet it must be apparent from a (224) perusal of the opinion that this conclusion was reached on the ground that such continuous transportation was not interstate commerce. Indeed, the entire course of the reasoning of the court is in support of this very principle, and is clearly applicable to the question involved in this appeal. The language of the court is plain and emphatic, and we do not feel at liberty to ignore it, and especially when it *Page 164 
is applied to telegraphic communication, under the peculiar circumstances of this case. The court, in speaking of the grant of power to regulate commerce between the States, remarked: "But, as was said byChief Justice Marshall, the words of the grant do not embrace that commerce which is completely internal, which is carried on between man and man in a State, or between different parts of the same State, and which does not extend to nor affect other States. Commerce, observed the Chief Justice, undoubtedly, is traffic, but it is something more; it is intercourse." The court further proceeded to say: "The point of departure and the point of arrival were alike in Pennsylvania. The intercourse was between those points, and not between any other points. Is such intercourse, consisting of continuous transportation between two points in the same State, made interstate because in its accomplishment some portion of another State may be traversed? Is the transmission of freight or messages between two places in the same State made interstate business by the deviation of the railroad or telegraph line on to the soil of another State?" Again, in another part of the opinion it is said: "It is simply whether, in the carriage of freight and passengers between two points in the same State, the mere passage over the soil of another State renders that business foreign which is domestic. We do not think such a view can be reasonably entertained, and are of the opinion that this taxation is not open to constitutional objection by reason of the particular way in which Philadelphia was reached from Mauch Chunk." The court uses the words "continuous passage," (225) from which it is to be inferred that if, after the freight passed beyond Pennsylvania, it was transferred to another transportation agency in New Jersey, and by this other agency carried to Philadelphia, it would be interstate commerce, and the same is consigned to a point in New Jersey and then reshipped to Philadelphia. It is in evidence that the defendant owns and operates a continuous wire, or system of wires, from the offices mentioned to other points in North Carolina, and therefore it is not compelled to transfer its business to any other agency outside of North Carolina in order that it may reach its destination in this State. In this respect our case is stronger than the one from Pennsylvania, as the road from Phillipsburg to Philadelphia was owned and operated by another corporation, and not by the Lehigh Valley Railroad Company. We refrain from entering into an extended discussion of the subject, and are content to follow the reasoning of the Supreme Court of the United States, whose authority upon such questions is conclusive.
We will observe, however, that we think the principle laid down by that court is peculiarly adaptable to cases like the present, in which there is such an exceptional facility for the evasion of State authority to *Page 165 
fix the rate of charges. This may be done in an instant and without expense by so adjusting the wires that messages must go through a part of the territory of another State. We think the exception should be overruled.
The remaining exception which it is necessary to consider relates to that part of the order which substantially commands the defendant to open its offices at Edenton and Elizabeth City for the transmission of commercial messages. It is urged, but not very seriously pressed, that the order only means that the company shall transmit such messages at the prescribed rates, whenever it undertakes to do that character of business at those points. The order of the court is not, in our opinion, susceptible of such a construction, but whatever doubt there may be must surely vanish when it is considered in connection with (226) the finding of the commission upon which it is based, and which the court, in its judgment, approves and adopts. This finding is that the operators in said offices "are the agents and operators of the defendant, and that it is their duty to transmit commercial messageswhen tendered to them to points in North Carolina at the rate prescribed by the commission." It is impossible, without violating all rules of interpretation, as well as destroying the plain import of language, to adopt the view contended for, and it is, therefore, necessary to determine whether the commission act conferred upon the commission the authority to direct that the said offices should be opened for commercial business. That it has no such authority is settled by this Court in Mayo v. TelegraphCo., 112 N.C. 343 (decided since the trial of this proceeding), in which it is declared that "there is nothing to show the intent of the statute to give to the commission power to prescribe other rules and regulations for telegraph lines than those directed in section 26, with regard to their charges for the transmission of messages, as neither of the other sections could be made to apply to telegraph, even if the same had been specifically named." Under this decision, so much of the order as is open to the objection referred to must be set aside, but in all other respects it is affirmed.
Let it not be understood that we are deciding that a corporation, like the defendant, exercising its franchise, the right of eminent domain and other unusual privileges, under a grant from the State for the benefit of the public, can give any undue or unreasonable preference or advantage to any particular person, company or corporation. This question may be presented when commercial messages have been tendered and declined at the said offices, but we think it would be going outside of the record to pass upon it now. And especially should we refrain from doing so when the intelligent counsel, who appeared (227) for the defendant, very properly concluded that the court would *Page 166 
not anticipate a point of such importance, and therefore did not deem it necessary to discuss it.
The order of the court is modified and
Affirmed.
Cited: McLean v. Breece, post, 393; Leavell v. Tel. Co., 116 N.C. 220;Caldwell v. Wilson, 121 N.C. 474; Pate v. R. R., 122 N.C. 880; Hendonv. R. R., 125 N.C. 128; Corporation Com. v. R. R., 170 N.C. 569;Bateman v. Tel. Co., 174 N.C. 99; Speight v. Tel. Co., 178 N.C. 150.