Kinkead, J.
Plaintiff seeks in this action to have the defendant permanently-enjoined from enforcing or putting into effect a certain. order made by the commission concerning shipments of milk by the railroad company.
The order is as follows:
“It is therefore ordered, that said defendant, the Baltimore & Ohio Railroad Company, be and it is hereby notified and re *666 quired to cease and desist from the practice of requiring shippers of milk between points within the state of Ohio to load the same into baggage cars.
“It is further ordered, that said defendant, the Baltimore & Ohio Railroad Company, eliminate from its said Milk Tariff R. C. 0. No. 327, either by issuing and filing a new tariff or by supplement, said rule or regulation by which the shippers of milk between points within the state of Ohio may be required to load his milk into the baggage car, as provided in the existing tariff.
“It is further ordered, that said defendant, the Baltimore & Ohio Railroad Company, publish a tariff of rates to the city of Columbus, Ohio, from all points on its line in Ohio where milk is now received for shipment to any other point in Ohio, either by specifically naming the points between which the same shall apply, or by publishing a reasonable distance tariff which may be applied to shipments from such points to Columbus, Ohio, as well as from all regular stations in Ohio on defendant’s line.”
The rule or regulation in plaintiff’s milk tariff referred to in the order is:
“The rates quoted herein are conditional upon shippers loading the cans of milk or cream in baggage cars when required to do so.”
The railroad company complains that the order by the commission will greatly increase the cost of handling milk; that other railroads operating in Ohio require the shippers of milk and cream to load the same into their baggage ears.
It is claimed in the second cause of action that the order is invalid, unlawful and void, because:
“It is legislative in its nature and effect, and the defendant lacked power to make it, by reasons of the provisions of Section 1 of Article II of the Ohio Constitution vesting the legislative power of the .state in the General Assembly.” That—
“Said order is a law of a general nature, without uniform operation, in violation of Section 26 of Article II of the Ohio Constitution. ’ ’ That—
“Said order imposes a burden upon the plaintiff alone of all the railroad companies operating in said state of Ohio, in violation of Section 1 and Section 2 of Article I (known as the Bill of Rights) of the Ohio Constitution, and also deprives the plaintiff of its property without compensation and without due process *667 of law, in violation of Section 19 of Article I (known as the Bill of Rights) of the Constitution of the United States, and denies to the plaintiff the equal protection of the laws, in violation of said Fourteenth Amendment to the Constitution of the United States. ’ ’
The third cause of action attacks the validity of the order, on the further ground that it constitutes an interference with the plaintiff’s interstate passenger traffic, as a substantial portion of the milk is shipped on interstate trains; that many interstate shipments of milk and cream are frequently transported in the same cars with shipments of milk and cream moving from one point to another in the state of Ohio, and the two are frequently .loaded' from the same stations together; that the railroad company carries many passengers and their baggage who are on interstate journeys over the road.
It is contended that the order is not limited in its scope and effect to commerce wholly within the state of Ohio, and it is the purpose of the defendant to enforce said order without any reference to and notwithstanding the burdens which its.enforcement will impose upon interstate commerce; that the order will impose an unreasonable burden upon interstate commerce, in violation of that portion of Section 8 of Article I of the Constitution of the United States, which provides that the Congress shall have power to regulate commerce among the several states.
The railroad commission interposes a demurrer to the second and third causes of action, which puts in issue the validity of the railroad commission act.
It is claimed that the railroad commission law, by means of which the Legislature empowers the railroad commission to make the order or regulation complained of, is unconstitutional because it constitutes a delegation of legislative power in violation of the Constitution.
In other words, it is urged that the order of the commission is in the nature of a law, which only the Legislature can make. It will be noticed that the order is simply to the effect that the railroad company desist from the practice or regulation complained of, directing publication of a tariff in accordance with their order and the law. Railroads being quasi public agencies, *668 baying been constructed for the common and equal benefit of all persons wishing to avail themselves of the facilities which they afford, the Legislature in its wisdom has enacted laws in furtherance of this principle, conspicuous among which is the railroad commission act.
The fundamental rule of equality of service is the controlling spirit of this aet. A careful analysis will disclose that the duties and obligations of railroads tó the public have been quite fully circumscribed by- this law. Rules of conduct pertaining to railroad service are definitely prescribed by the various sections of this act, and are not left to the judgment or discretion of the commission. The rules of conduct being so prescribed, the Legislature created an executive body to inquire into the facts, to apply and enforce the law. The order complained of is by no means a law, but is a pronouncement by the commission that the service and regulation thereof is contrary to the law.
■ The designation of an executive board, by means of which the law is to be enforced, is a wise regulation. Intrastate commerce is of great interest and importance to the people of the state. Infractions of the law should be speedily corrected. The greater portion of the powers committed to the commission concern matters which are only appropriately devolved upon an executive board. They may not be so conveniently conferred upon courts. Judicial power is determined by the light of the common law and the history of our institutions as they existed anterior to and at the time of our Constitution. Courts can claim no power that do not belong to them by the common law, supplemented by written constitutions and statutes.
Whether power in a given instance ought to be assigned to the judicial department is determinable from the nature of the subject. That which does not strictly pertain to the judiciary’ by the test above named more appropriately may be devolved upon other bodies. Executive powers should not be committed to the judiciary. A careful analysis of the railroad commission law will disclose that the chief functions and duties of the commission are executive in their nature. In some of the decisions of oiir court of last resort such powers have been characterized as administrative.. But in Harmon v. State, 66 O. S., 253, it is in *669 sisted that such characterization is improper, that all powers are legislative, executive and judicial, the Constitution warranting no such classification as administrative.
In the history of the state there have been numerous instances where the Legislature has invested boards, bodies and officers with the power, and charged them with the duty of ascertaining the facts, and hearing and deciding questions, when deemed necessary or expedient, in order to carry into execution laws enacted to accomplish some public need or purpose, or deemed for the public good. (Minshall, Justice, in France v. State, 57 O. S., 17.)
The opinion is.now here expressed, therefore, that the duties of the commission in the matter now brought to the .attention of the court are executive, rather than legislative or judicial. In some respects the powers conferred upon the commission may connect, approach, or be like those which are strictly judicial in their nature, but no serious harm results as long as the law provides for final recourse to the courts.
The presumption being in favor of the validity of a law, courts must not only be convinced of its invalidity,- but the conviction must be clear and strong, or the invalidity must be shown beyond a reasonable doubt. Fletcher v. Peck, 6 Cranch, 87.
Unless the judicial power be exclusively and finally conferred upon an executive, there seems no urgent necessity of applying the constitutional inhibition. The acts of the commission being merely prima fade reasonable, and the enactment preserving all the usual remedies afforded by law, the right of redress in courts of law is not taken away, and the law should not under such circumstances be declared invalid.
In the rapid growth and expansion of trade and commerce, brought about and developed largely by the remarkable development of quasi public railroad agencies, it is readily apparent that a progressive people demand and need modern and effective facilities for prompt and efficient execution or enforcement of laws which are designed to foster and preserve equality of service, as well as efficiency thereof, by railroad companies.
In constructing the government and framing .the primordial law, the builders provided in general terms that legislative *670 power shall be vested in a General Assembly, and that acts (except certain ones named) shall not be passed to take effect upon the approval of any other authority than the General Assembly, and that judicial power shall be vested in the courts named. It has become the settled rule, by judicial interpretation, that the Legislature can not delegate its power, and that strictly judicial power may be conferred only upon the judiciary.
Nowhere does the fundamental law undertake to prescribe in detail the nature of, or the limitation upon, the powers of the three departments of government. Nor have the courts in a century of administration of law, under the present plan of government, shed much new light upon the shadowy and obscure boundary lines between the legislative, executive and judicial departments. It is no doubt wise that no special effort has been made to mark off or prescribe hard and fast lines of demarkation between the three departments. It seems quite impossible for the Legislature to formulate rules of conduct and service laws respecting railroad companies with sufficient detail or so minutely as to cover every possible emergency that may arise. The determination of facts and of the applicability of law thereto, of necessity should be committed to some body.
If the Legislature enacts a law sufficiently general in its provisions as may be appropriately applied to the detailed conduct and duties of the railroad company, the constitutional mandate is satisfied if the ascertainment of the fact and the application of the prescribed general rule of duty and conduct is committed to an executive body, such as is the railroad commission.
The impracticability of provision by detail by the constitutional compact of the people’s government demands liberality of construction of the primordial law by the courts. Especially should such a rule be applied to old instruments of fundamental law in dealing with enactments framed by the Legislature to meet the demands of a progressive people and of a highly developed and modern trade and commerce, and means and agencies thereof.
The flexibility of the constitutional mandate to meet pressing demands of justice, has been recognized by the, courts from an early period of juridical history of the state. The first epoch *671 is marked by tbe opinion of tbe great Ranney, Judge, himself a member of the convention which framed the Constitution, in C., W. & Z. Railroad Co. v. Commissioners, 1 O. S., 77. In this ease it was held:
“That the complete exercise of legislative power by the General Assembly, does not necessarily require the act to so apply its provisions to the subject-matter, as to compel their employment without the intervening assent of other persons, or to prevent fheir taking effect, only, upon performance of conditions expressed in the laws. * * * The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an atithority or discretion as to its execution, to be exercised under and in pursuance of the law. The first can not be done; to the latter no valid objection can be made.”
This has furnished the basis of all eases touching local option legislation against intoxicating liquors, reports of which have not been made upon all cases subsequent to Gordon v. State, 46 O. S., 607.
This rule does not seem always to have been consistently applied to all classes of eases. France v. State, 57 O. S., 1, 17, 18; and Harmon v. State, 66 O. S., 249, are difficult to distinguish.
An examination of the railroad commission law will disclose that it is has prescribed general rules of conduct to be followed by railroad companies in their business.
It requires railroads to file schedules of rates, forbids changes therein except upon notice to the commission; no greater charge shall be made than is specified therein; joint rates over connecting roads shall be just and reasonable, and every unjust and unreasonable charge is prohibited and declared to be unlawful; the classification of freight shall be uniform on all roads; each road is required to furnish suitable cars for all who apply; when there is an insufficiency at any time, the available cars must be distributed to applicants in proportion to their respective immediate requirements, without discrimination; the commission may enforce reasonable regulations for furnishing ears, etc. These and many others, are illustrative of the rules of law prescribed in the act. Section 576 expressly enjoins upon the com *672 mission the dut3r of enforcing the laws relating to railroads. Section 564 expressly prohibits a railroad company from discriminating against any of its patrons. It requires that no carrier shall make or give undue or unreasonable preference or advantage to any person, or to any locality, or to any particular description of traffic, to any undue -or unreasonable prejudice or disadvantage in any respect whatsoever. Section 504 requires each railroad to furnish reasonable and .adequate service and facilities.
Considering the law in all its parts, and the powers and duties of the commission, so far as the fact's are presented by the petition, the contention of the railroad company that legislative power has been delegated, does not seem well founded. It seems clear that the order complained of is so framed as to constitute an application or enforcement of the law.
It appears, so far as this case is concerned, that the Legislature has merely delegated the power to the commission, to ascertain and determine some fact or facts, “or state of things upon which the law makes, or intends to make, its own action depend.” State v. Messenger, 65 O. S., 398, 402; Lock’s Appeal, 72 Pa. St., 491.
It has merely conferred ‘ ‘ an authority or discretion as to execution,” to be exercised under and in pursuance of the law. C., W. & Z. R. R. Co. v. Commissioners, supra.
In this case the commission has ordered the railroad company to desist from the practice which it deems to be within the inhibitions of the law.
It had no occasion to do some of the things which it is empowered to do by other actions which are not the subject of inquiry here, such as (Section 540) fixing rates when railroads refuse or neglect to fix the same, or substitute its judgment for that of the railroad in particular cases.
Section 543 providing that all regulations, practices and service prescribed by the commission shall be in force and be prima facie reasonable, unless suspended or found otherwise in an action brought for that purpose pursuant to the provisions of the act, ma3r be considered as the saving clause of the act according to some authority. The doctrine in Chicago, etc., Ry., Co. v. *673 Minnesota, 134 U. S., 418, and of Budd v. N. Y., 143 N. Y., 517, appears to be that where the Legislature creates a commission to regulate the rates of charges, such commission has no power to make a schedule of rates which shall be final and conclusive evidence as to the reasonableness of the charges, because judicial inquiry is thereby cut off.
So may it be said that where an order, such as is made in this case, is to be considered as merely prima facie evidence that the regulation of the plaintiff respecting the shipment is unreasonable, the judicial inquiry with reference thereto is not shut off. In fact the first cause of action not involved in this demurrer, raises that question.
In the presentation of this case the attention of the court was not directed to any authorities in other jurisdictions touching the. validity of similar laws. It was stated that there had been no positive decision affirming the validity of this class of laws. Since the preparation of this opinion I have made an examination into the' matter, and find where some phases of such laws have been passed on.
In Interstate Commerce Commission v. Brimson, 154 U. S., 447 (1894), the twelfth section of the interstate act, which authorized the circuit courts to use its process in aid of inquiries before the commission, was held valid. Mr. Justice ITarlan said :
“Interpreting the interstate commerce act as applicable, and as intended to apply, only to matters involved in the regulation of commerce, and which Congress may rightfully subject to investigation by a commission established for the purpose of enforcing the act, we are unable to say that its provisions are not appropriate and plainly adapted to the protection of interstate commerce from burdens that are or may be, directly, and indirectly, imposed upon it by means of unjust and unreasonable discriminations, charges and preferences. Congress is not limited in its employment of means to those absolutely essential to the accomplishment of objects within the scope of the powers granted to it.
“An adjudication that Congress could not establish an administrative body with authority to investigate the subject of interstate commerce and with power to call witnesses before it, and *674 to require the production of books, documents and papers relating to that subject, would go far towards defeating the object for which the people of the United States placed commerce among the states under natural control. All' must recognize, the fact that full information necessary as a basis of intelligent legislation by Congress * * * can not be obtained, nor can the rules established for the regulation of such commerce be efficiently enforced, otherwise than through the instrumentality of an administrative body, representing the whole country, always watchful of the general interests, and charged with the duty not only of obtaining the required information, but of compelling by all lawful methods obedience to such rules. ’ ’
Railroad Commission Cases, Stone v. Farmer’s, etc., Trust Co., 116 U. S., 307 (1886), had under consideration the provisions of the statute of Mississippi of March 11, 1884, creating a railroad commission.
Chief Justice Waite said:
“The great purpose of the statute, now under consideration is to fix a maximum of charges, and to regulate in some matters of a police nature the use of railroads in the state. In its general scope it is constitutional.”
■ In Georgia Railroad v. Railroad Commissioners, 70 Ga., 694 (1883), the constitutionality of the Georgia railroad commission act was affirmed. It was held that:
“The railroad commissioners are officers appointed to carry into execution the laws passed by the Legislature.
“The powers of the railroad commissioners are not legislative.
“The difference between the power to pass a law and the power to adopt rules and regulations to carry into effect a law already passed, is apparent and strikingly great, and this we understand to be the distinction recognized by all the courts as the true rule in determining whether or not in such eases a legislative power is granted. The former would be unconstitutional, whilst the latter would not. 91 Ill., 357; 94 U. S., 113, 155, 164.”
In Chicago, etc., Ry. v. Railway Commissioners, 35 Fed., 866, opinion by Mr. Justice Brewer, it was held that:
“The provisions of the act of Iowa Legislature of April 5, 1888, to regulate railroad corporations, and other common ear *675 riers, and to increase the powers, and further define the duties, of the state railroad commissioners, and to prevent and punish extortion and unjust discriminations, which authorize said board to make and enforce a schedule of rates for railroad charges, are not unconstitutional as an attempted delegation of legislative power. ’ ’
While the Legislature may provide reasonable rules and regulations for the purpose of prevention of unjust discriminations and preferences, it is said to be equally well settled that in delegating authority to a commission to provide reasonable rules and regulations for the effectuating of such purposes, it does not transcend its constitutional powers (Stone v. Farmer’s, etc., Trust Co., 116 U. S., 307; 19 Am. & Eng. Ency. of Law, 686; Atlantic Express Co. v. Railroad Co., 111 N. C., 463, 32 Am. St., 805, 806). In the latter case, however, the act creating the commission created it and constituted it as a court of record, with all powers and jurisdictions of a court of general jurisdiction.
In McWhorter v. Railroad Co., 24 Fla., 417 (12 Am. St., 220), it was held that a statute which delegates power to a railroad commission to fix just and reasonable rates for freight and passengers, to be observed by railroad companies, is not unconstitutional as being a delegation of legislative power and control.
The commission in this case has heard the complaint, ascertained the facts, and applied the law, and directed that the railroad desist from the regulation prescribed by it, and to observe the law prescribed by the Legislature. It has not in this instance exercised the power apparently conferred upon it by Section 527, by substituting its regulation for- that of the railroad. The power conferred upon the commission by this section, if literally carried out by substituting some rule or regulation not authorized or fixed by the Legislature itself might result in acts legislative in character. If it had substituted for the regulation made by the railroad company, some regulation which it had been determined to be just and reasonable to be imposed and followed in the future, not prescribed by the law itself, it might then be exercising legislative functions. This it has not done in this instance, but on the contrary the commission has merely *676 applied the law by holding that the regulation complained of is within the law, and is therefore to be discontinued.
The act of the commission has not taken the property of the railroad company without due process of law.
As to the remaining objection raised, that the act of the commission constitutes an interference with interstate commerce, it is apparent from the facts presented this position is not sound. The commission has not undertaken to interfere with interstate commerce. It is well understood that the state may, in the regulation of its own affairs touching intrastate commerce, place certain restrictions upon the instruments of interstate commerce, which from the nature of things is necessary and within its powers, to which railroads must be subjected.
The demurrer to the second and third causes of action is therefore well taken, and is sustained.