F. L. Hoffman and R. A. LeBlond.
Louis Reemelin and H. H. Hosbrook.

———

(Harrison County Common Pleas.)
November Term, 1900.

J. S. McBEAN v. J. J. SEARS, Treasurer.

(1). The phrase "prescription issued" in the Dow Law means the same as "written prescription" and every sale by a druggist otherwise than upon a prescription issued "for medical purposes by reputable physicians," must be held to be without the exception, and the burden of showing such sale to be within the exception rests upon the party making it, and this proof is to be in writing, that the statute may not be evaded. The fact that the plaintiff sold liquor in good faith for medicinal purposes can be no protection to him, unless the prescriptions on which he made the sale meet the requirement of the statute.

(2). A prescription in contemplation of the statute should be dated, should contain the name of the patient with directions as to its use and should not only be signed by the physician issuing it, but should be directed to some particular druggist as evidence of good faith on the part of the one issuing it. Such a prescription is an effective means of preventing abuses and evasions and subterfuges, and is of equal importance where the druggist is himself a physician as in any other.

(3). It is not competent under the law to offer parol evidence that a sale was made on a certain prescription. The prescription itself must be the only evidence. If a druggist sells upon a prescription which requires oral proof in addition to the prescription itself, he sells at his peril.

(4). The court inclines to the opinion that under the Dow Law a physician

may not both prescribe and sell whiskey to his patients.

———

MANSFIELD, J.

In this action the plaintiff seeks to restrain the defendant from collecting $350.00 tax and $70.00 penalty for what is known as the Dow tax, assessed against him and placed on the tax duplicate by the auditor as a lien on plaintiff's property in Cadiz, Ohio, in February, 1900, where plaintiff is said to have carried on the business of "trafficking in intoxicating liquors" from May, 1899, to May, 1900.

The plaintiff is a regular registered physician and conducts a drugstore in the village of Cadiz. The county auditor upon satisfactory information, and believing that the plaintiff was engaged in the traffic of intoxicating liquors, did, in February, 1900, assess and place upon the tax duplicate, one year's tax from May, 1899, to May, 1900, against plaintiff and the property in which he conducted said drug business, and the defendant will proceed to collect the same unless restrained by order of the court.

The plaintiff insists that the act of the auditor was wrongful and without authority of law, because, as plaintiff claims, he was not during the time stated, engaged in the business of trafficking in intoxicating liquors.

The defendant files an answer and cross-petition claiming that plaintiff was, during the time stated, engaged in the business of trafficking in intoxicating liquors, and asks for an order to sell plaintiff's personal property in the store to satisfy said tax, and that the same be declared a lien upon the real estate, and since the filing of the answer defendant has filed a supplemental cross-petition setting up an assessment against plaintiff for the year from May, 1900, to May, 1901.

Upon the trial of the case the plaintiff admitted that he sold liquors in the following ways: First, on prescription of registered physicians; second, on his own prescriptions; third, on the prescriptions of a veterinary surgeon; fourth, for mechanical and pharmaceutical purposes.

As the evidence shows, if the witnesses are to be believed, that he made several sales without the pretense of a prescription or that the liquor was to be used for medical purposes, which of course is denied by the plaintiff. The finding of the last class of sales would of course defeat plaintiff; but in as much as he claims never to have sold liquors as a beverage and insists that all sales made by him were made in the utmost good faith, either for medical purposes upon proper prescriptions issued, or for known mechanical, or pharmaceutical purposes, I am con-

strained to endeavor to show that his position is not tenable even from his standpoint.

That the village of Cadiz has a valid local option ordinance, so called, is wholly immaterial. Section 4364-9 of the Revised Statutes provides that "upon the business of trafficking in intoxicating liquors, there shall be assessed annually $350.00."

Section 4364-16 defines the phrase "trafficking in intoxicating liquors" to mean "the buying or procuring and selling of such liquors otherwise than upon prescription issued in good faith by reputable physicians in active practice, or for exclusively known mechanical, pharmaceutical or sacramental purposes."

If the plaintiff sold liquors "otherwise than upon prescription issued or for mechanical, etc., purposes", then he should be held to pay the Dow tax" and this brings us to a consideration of the prescriptions issued and under which he claims immunity.

The following are fair samples:

"R Whiskey, qss.

————— M. D.

Feb 11th, 1900."

".25 c worth alcohol.

Dr. ————."

"R Spr. Frumenti of Sig-M as directed.

————— M. D."

"R Spr, Frumenti, qss.

Resp. —————V. S."

It will be observed that these alleged prescriptions are directed to no person, are without the name of the person for whom issued and the date of issue (with one exception), and lack directions as to taking, and it is insisted that such prescriptions are in the usual and ordinary form. In many of the prescriptions where whiskey and certain harmless drugs are prescribed there are no directions as to the proportions in which they are to be mixed and no directons as to how and when to be taken. Indeed, several of the witnesses who presented prescriptions of this kind testified that they requested the plaintiff not to mix but to put up separate as they wished to take the medicine separate.

The phrase "prescription issued" means the same as "written prescription" and every sale by the plaintiff otherwise than upon the prescription issued "for medical purposes by reputable physicians" must be held to be without the exception, and the burden of showing such sale to be within the exception rests upon the party making it, and this proof is to be in writing that the statute may not be evaded. The fact that the plaintiff sold liquor in good faith for medical purposes can be no protection to him, unless the prescriptions on which he made the sales

meet the requirement of the statute. The Century Dictionary defines the word "prescription" to mean "in medicine, a statement usually written of the medicine or remedies to be used by a patient and the manner of using them." And the word "issued" is defined to mean "to send out; to deliver by authority; as, to issue a writ or precept."

It has already been said the prescriptions were not addressed to any one. They do not contain the name of the patient to whom the liquor is to be sold, nor the manner of its use. The fact (which may be said to be conceded by the defense), that the persons issuing such prescriptions are regular registered and reputable physicians, makes no difference if the prescription itself is defective in form. Nor does the fact that they were prepared according to the United States dispensatory, and that they were in the ordinary form used by the medical profession of the country. The question is, do they meet the requirement of the law. A prescription may be sufficient to inform the druggist of the goods desired, and in that sense according to the usual and ordinary forms, and not be sufficient to comply with the requirements of the statute exempting all persons from taxation who sell liquors only upon "prescriptions issued in good faith by reputable physicians."

The prescriptions offered in evidence do not advise any particular person to buy or any particular person to sell liquors, nor is there any directions as to how frequently or in what quantities it shall be taken. A prescription in contemplation of the statute should be dated. It should contain the name of the patient with directions as to its use, and should not only be signed by the physician issuing it, but it should be directed to some particular druggist as evidence of good faith on the part of the one issuing it. Such a prescription is evidence of a tangible and lasting form, and it puts a professional man upon record as having deliberately advised a particular patient to buy and a particular druggist to sell liquors. It is an effective means of preventing abuses and evasions and subterfuges, and is of equal importance where the druggist is himself a physician as in any other.

If the prescriptions offered in evidence are legal in form under the statute, then the law should be amended; for what is to prevent any physician whose conscience would acquit him, from issing a prescription to habitual drunkards as often as requested and that same drunkard from getting his prescriptions filled at the nearest drug store? The physician could not be punished because he has violated no law; and the druggist would be protected on producing a prescription without date,

name of patient or direction as to use, and testifying that he sold such drunkard the whiskey on that prescription; and further, the physician who issues the prescription upon which the druggist testifies he made the sale, could not be prevented from seeking to defend his reputation by testifying that he never issued any such prescription to that particular person.

Again in many instances there is not a scintilla of evidence that the doctors gave the prescription to and prescribed liquor as a medicine for the person presenting the prescription and upon which the sale was made. Who knows that the prescriptions were issued in good faith to the persons presenting them at all? The doctors who issued them may have acted in good faith and given them to persons whom they honestly believed to be sick and who were their patients but such persons may have sold the prescriptions to habitual drunkards who could get the whiskey by paying for it on presentation at plaintiff's drug store. Physicians of honor and high profession all would be open to the imputation of selling prescriptions to well known habitual drunkards when in truth and in fact they had not done so at all.

They had simply placed in the hands of one of their patients, perhaps, the means of trafficking in their prescriptions.

Let it be known that all prescriptions prescribing liquor as a medicine must contain the name of the patient, and any doctor who has regard for his professional standing will long hesitate before putting in writing the evidence that he directed a particular person to buy liquors, and especially is this so if the person applying for the prescription is known to be of intemperate habits.

Some of the witnesses testified that they purchased whiskey from plaintiff on prescriptions issued by other doctors, and the plaintiff himself so testified, but he could not produce the particular prescription upon which he made the sale. A hundred of such prescriptions, without date and the name of the patient, would be sufficient for any druggist for all time, if, in a proceeding of this kind, or in a prosecution for violation of the ordinance, the druggist should be permitted when charged with making a sale to some particular person, to produce a bundle of these flexible or india-rubber prescriptions and say that he made the sale on one of the prescriptions in that bundle, the particular one, however, he is unable to identify. And this is just what occurred in the case at bar. The plaintiff when asked if he sold to a particular person would say, "yes", but always on prescription." "Produce that prescription, Dr." "I can't do it.

It is along with the others there on the table." If the Doctor did not remember of selling the party whiskey, he would say, "I do not recollect, but if I did the prescription is in that bundle on the table."

I do not believe that it is competent under the law to offer parol evidence that a sale was made on a certain prescription. The prescription itself must be the only evidence, and as the statute calls for "prescription issued in good faith by a reputable physician in active practice," it is the only means of protection accorded to the druggist; and that if he sells upon a prescription which requires oral proof in addition to the prescription itself he sells at his peril. I hold therefore, that the prescriptions offered in evidence do not meet the requirements of the law, and therefore were inadmissible evidence.

And in maintaining this conclusion I am supported by the supreme court of Indiana in the case of Edwards v. State, 23 N. E., 277, and in Caldwell v. State, 46 N. E., 697. The syllabus in the latter case is as follows:

2. A writing in words, "R. Spt. Frumenti, qus. For medical use", dated and signed by a physician but not addressed to any one, and not containing the name of the supposed patient or the manner of using the liquor, is not a sufficient "written prescription," within Revised Statutes, 1894, forbidding a druggist from selling liquor on Sunday unless the person to whom the same is sold shall have first procured a written prescription therefor from some practicing physician. 3. A prescription may not meet the requirements of Rev. Stat., 1894, prohibiting liquor sales on Sunday by a druggist without written prescriptions, although it complies with the United States dispensatory."

I will next consider the class of sales made by plaintiff to supposed patients on his own prescriptions.

Eight witnesses from Cadiz all testified they purchased whiskey from plaintiff without presenting a prescription from any physician, on the mere suggestion that they were sick with a bad cold, or stomach trouble, or some other disease, and that they believed whiskey would be good for them. In justice to the plaintiff I will say that while he did not deny that some of these witesses first suggested whiskey as a remedy for their disease, he insists that he made such an examination that led him to believe they were sick, and that whiskey, or gin or brandy was the appropriate remedy, and that he then wrote the prescription in the usual form, filled it, and charged for the whiskey only. Some of these witnesses were his regular patients and some not. In no instance did he charge a fee for

consultation. The writing of the prescription and the advice as a physician were gratuitous on his part.

While I am not just prepared to hold that a physician may not in any instance, both prescribe and sell whiskey to his patients; yet there is high authority for such a holding, and many reasons could be advanced why such be the interpretation of the law.

In Black on Intoxicating Liquors, sec. 215, I find the following:

"In state where a druggist is authorized to sell only on the prescription of some regularly registered phyician, it is ruled that a drugigst, who is himself a duly qualified physican, cannot lawfully sell on his own prescription."

Citing 81 Mo., 78, and 10 N. E., 107 (Indiana Supreme Court). And on page 739 of vol. 11 of A. & E. Ency. of Law, is this language:

"Where the statute authorizes a sale to be made only on a prescription of some regularly practicing physician, a druggist, who is himself a regularly practicing physician, cannot sell under his own prescription.

"It is said that where a physician sells liquor to persons who apply therefor, by their own suggestion, and not because of his prescription as their medical adviser the fact that he is a practicing physician is no defense to a prosecution for illegally selling intoxicating liquors; and the mere fact that the physician knew that the purchaser's wife was sick, has been held not to show that the liquor was sold for medical purposes". "It has been said to be no defense to an indictment charging the sale or gift of intoxicating liquors, or bitters, in violation of a local statute prohibiting the sale of spirituous and intoxicating liquors, that the defendant was a practicing physician, and gave or sold them in good faith as a prescription to one who was under his treatment, notwithstanding the fact that it was shown that such was the proper treatment of the disease for which he was prescribing.

11 A. & E. Ency. of Law, p. 739. In case of State v. Cloughly, 35 N. W., 652 (Supreme Court of Iowa), I find this:

"Defendant offered to prove that he is a practicing physician, and that he was engaged in the general practice of his profession at the time of the transaction in question. His counsel stated, when this offer was made, that he would follow it with proof that the sales in question were made by him in the course of his practice as a physican; but the evidence was excluded. It may be conceded for the purpose of this case, that a physician who, in the course of his practice, should find that his patient required intoxicating liquors, might lawfully dispense such liquors to him. That however, does

not appear to have been the character of the transaction in question. The liquors were dispensed, not upon the judgment of the physician as to the need of his patient, but upon the demand of the customers; that is, they did not apply to the defendant for medical treatment for their diseases, and leave it to him to determine what remedies should be administered, but determined for themselves that whiskey or beer was the proper remedy for their maladies, and applied to him to supply it. The transactions on his part were commercial, rather than professional.''

In the case of Redding v. The State, 18 S. E., 389 (Supreme Court of Georgia), the following is the syllabus: ''The evidence being that the accused, a practicing physician, sold a half pint of whiskey to a certain person, who went to his store and said he was sick, and thought whiskey would help him, there being no evidence that the person was in fact sick, or that he was a patient under treatment by the accused who did nothing but examine him and then sold him the whiskey, the jury were warranted in finding that the transaction was not within the exception of the statute which allows practicing physicians to furnish liquors as medicines to their patients under treatment.'' In the opinion the court says: ''The accused sought to protect himself under the exception in the statute which allows practicing physicians to furnish medicine to their patients under treatment. There was no evidence to uphold this theory, save that the person to whom the whiskey was furnished said that he was sick. It does not appear that any prescription or treatment was applied for, furnished or paid for. The patient selected his own medicine, paid for it, received it and administered it himself. A man professing to be sick wanted whiskey because he thought it would help him. The doctor examined him, but what he thought either as to the sickness or the remedy no one but himself knows or ever knew, save from his own statement at the trial, and as might be inferred from the fact that he furnished the whiskey, and received pay for it. The jury could well conclude that this was more like selling whiskey than practicing medicine. The exception to the statute does not contemplate that a physician may take a thirsty man under treatment for the sole purpose of supplying him with the desired beverage.''

In the case of Steele v. Knowles, 11 N. W., 620 (Supreme Court of Iowa), a case where the defendant was both physician and druggist and managed a drug store the court says: ''We incline to think it is true liquors might be prescribed by a physician, and yet the circumstances surrounding the transaction might be such as to warrant the jury in concluding the liquor was sold as a beverage. Conceding a person may prescribe for himself and lawfully determine he should take intoxicating liquors as a medicine, and a druggist in such case may lawfully sell such liquors, it does not follow that it was always so prescribed or sold. It is undoubtedly true, the claim that it was taken as and sold as medicine may be a subterfuge and that, while in form sold as medicine, it was, in fact, a beverage, and so understood by both buyer and seller. The druggist must act in good faith, and the mere fact that a person says he wants intoxicating liquors as medicine will not exonerate the druggist if the circumstances are such as to warrant the court or jury in concluding that, in truth and in fact, it was sold as a beverage.''

In the case of State v. Hoff, 40 N. W., 820, (Iowa) the fourth paragraph of the syllabus is as follows: ''It was for the jury to determine from the frequency of the sales to the witnesses, from their appearance as men requiring intoxicating liquors for medicine, and whether bought with or without a physician's prescription, whether the sales were made by the defendant in good faith for the actual necessities of medicine.''

When we consider the habits of the witnesses touching the use of intoxicants as testified by them—the frequency of the sales—the flimsy and fugitive nature of their several maladies including bad colds, sore throats, pain in the breast, stomach, diarrhoea, dysentry, constipation, nervous prostration, antidote for opium habit, and numerous other diseases—the suggestion of the buyer that he thought whiskey would do him good—the prompt agreement of the plaintiff with the buyer after a cursory examination—entire lack of directions as to use—the fact that when other remedies were prescribed they were usually sold without mixing the whiskey, the fact that no prescriptions were presented, and the further fact that several of these witnesses testified they were not patients of plaintiff, we might well conclude in the language of a case already cited that 'this is more like selling whiskey than practicing medicine.' ''

In the light of the authorities cited and careful consideration of all the evidence in the case, I am constrained, from a sense of duty, to hold that all liquor, or nearly all, sold by the plaintiff to the witnesses named and testified to by them, was sold to be used as a beverage, and that the formality of writing a prescription or of examining the party applying for the whiskey was a mere sham and pretense to evade the law.

In arriving at this conclusion I am

not unmindful of the claim of plaintiff to the effect that he wrote all prescriptions and sold the liquor as a medicine in the utmost good faith. Conceding this to be true, there is a vast difference between doing and believing the further element in all sales of this character, to-wit: Did he honestly believe that the buyer would use the whiskey as a medicine? The fact that the party needed whiskey as a medicine, or that it was the proper remedy, or that it was sold as and for medicine is not sufficient. The burden is on the plaintiff to go further and show that he honestly believed that the party was not only getting it for medicinal purposes, but that he would actually use it as a medicine, and not as a beverage.

Whiskey is said to be a good remedy for a person who has the delirium tremens. A doctor, might therefore, in the utmost good faith, both prescribe for and sell whiskey to a person whi e actually sick with that malady; but as evidence of good faith, the doctor should direct the quantity to be taken at a dose, the times when to be taken, and should either administer it himself, or direct that it be administered by some person other than the patient. To prescribe for and sell and deliver to such a person a pint or quart of whiskey without direction as to dose or times to be taken, could never be justified on the plea that such person was found to be sick after an examination that whiskey was the appropriate remedy, and that it was prescribed and sold as and for medicine only. It would be an insult to the intelligence of the medical profession generally to hold that physicians that do this thing could be said to honestly believe that the liquor was purchased for its medicinal properties and to be used as such, and not for a beverage.

Just a few words relative to the testimony of the witnesses who testified to buying liquors of plaintiff without prescription on the pretense of being sick notably two from near Cadiz and the six detectives. While the plaintiff neither admits nor denies (if I remember his testimony correctly) making sales to these witnesses, yet he says if he did, it was for medicinal purposes, but he produced no prescriptions.

All these men expressly declare that they made no pretense of being sick or of shamming sickness. Whatever may be said about the six detectives, the fact remains that two other witnesses are citizens of your county, and for aught the court knows worthy of full credence. And possibly one other county witness could be put in this class also, although two of these did testify that they bought the liquor as a medicine; but one says that he did not consult plaintiff as a doctor. He simply

went to the drug store to buy whiskey, and got it without prescription or examination.

There is too much of this kind of testimony to put it aside lightly. It is of a convincing character, and carries conviction. I firmly believe that plaintiff sold liquors to all these witnesses as testified to by them; but whether made in the manner claimed by them is not so clear; but the sales having been shown, the burden rests upon plaintiff to show that such sales were made "upon prescription issued", in good faith by reputable physicians for medical purposes as required by the statute, and if he failed to do that, there is no escape from the conclusion that in making such sales except upon prescriptions meeting the full requirements of the statutes, he violated the plain provisions of the statute, and therefore must be held to have been engaged in the business of trafficking in intoxicating liquors otherwise than on prescriptions lawfully issued.

Some of the witnesses testified (two perhaps) that they bought intoxicants from plaintiff and plaintiff admitted it, for mechanical and pharmaceutical purposes. And whiskey was sold to a veterinary surgeon for alleged pharmaceutical purposes upon his prescription or order, and some sales were made to alleged agents of the veterinary surgeon on the presentation of the order from him. What is meant by the phrase "or for exclusively known mechanical, or pharmaceutical purposes." I shall not undertake to explain further than to say that to justfy sales under this clause the druggist cannot safely act on the mere word of the purchaser that he wants it for such purpose. If the mere statement of the purchaser that he was buying the intoxicating liquors for mechanical or pharmaceutical purposes exclusively were held to be a complete defense or justification for the druggist. then the worst tippler in the community could get all the liquors desired by uttering the magic words "for mechanical purposes". Every druggist who sells intoxicating liquors for mechanical or pharmaceutical purposes upon the mere statement of the buyer that he wants it for such purpose takes the risk of convincing a court or jury that he acted in good faith, and that he honestly believed it would be used for such purpose and only for such purpose; and if the person to whom he sells is known to him to be a person who uses such liquors to excess as a beverage, then the risk of convincing a court or jury of the good faith of the transaction is proportionately increased, and his case is lost when the act is done.

I therefore hold that under every phrase of this case the plaintiff should be required to pay the usual tax and

penalty required of persons engaged in the business of trafficking in intoxicating liquors otherwise than upon prescriptions lawfully issued, or for exclusively known mechanical or pharmaceutical purposes, and that he should be held to pay the same for eighteen months from and after the fourth Monday of May, 1899, in all, tax and penalty, $630.00.

The petition of plaintiff is dismissed, the temporary injunction dissolved, and finding and judgment for defendant on his answer and cross-petition for $630.00 and costs, and the same is declared to be a lien upon the property of the plaintiff, with proper order of sale of both real and personal property.

I have given this case careful consideration, because of the high professional standing of the plaintiff, and I have expressed my reasons at some length in support of the conclusions reached because of the oft repeated declaration of the plaintiff that in making all sales testified to by him, he acted in "entire good faith."