THE NORTH CAROLINA CORPORATION COMMISSION, UPON THE COM-
PLAINT OF W. D. REDFERN AND OTHERS, v. WINSTON-SALEM SOUTH-
BOUND RAILWAY COMPANY.

(Filed 12 January, 1916.)

**Corporation Commission—Appeal—Parties—Appeal and Error.**

Under the statutory proceedings upon petition to the Corporation Com-
mission to require a railroad company to relocate its depot for the alleged
convenience of petitioners of a certain town, the Commission decided with
the defendant company, and upon appeal to the Superior Court that court
dismissed the action, upon the ground that the petitioners were not such
parties as to have acquired the right, the statutes providing that the
appeal be taken in the name of the State on relation of the North Caro-
lina Corporation Commission, etc., and the present appeal being in the
name of the Commissioners upon the complaint of the petitioners. In
this appeal it is *Held*, that the action by the trial judge in dismissing the
appeal was correct.

HOKE, J., filed concurring opinion; ALLEN, J., concurring in the result;
CLARK, C. J., dissenting; WALKER, J., concurred in opinion of Justice BROWN.

APPEAL by plaintiffs from order of the Corporation Commission,
heard by *Carter, J.,* Spring Term, 1915, of ANSON.

The court dismissed the appeal, and the plaintiffs appealed to this
Court.

*Lockhart & Dunlap for plaintiffs.*
*H. H. McLendon, Robinson, Caudle & Pruette for defendant.*

BROWN, J. It is contended that any individual may petition the
Corporation Commission to direct the removal of any railroad station
in this State to some place desired by petitioner, and if the Commission
refuses, petitioner may appeal to the Superior Court and have the
matter submitted to the decision of a jury. The contention is based
upon section 1074, Revisal, viz.: "From all decisions or determinations
made by the Corporation Commission any party affected thereby shall
be entitled to an appeal."

The statute distinctly confines the right of appeal to a *party* to the
proceeding.

The petition sets forth no property or proprietary right in petitioners
that is affected by the order of the Commission. They are affected
only as citizens of the community, and have no more interest than the
intervenors and other citizens who oppose the removal of the station.
There is no law that authorizes the individual citizen, having no in-
terest in the subject-matter except that which is common to all, to
prosecute before the courts in the name of the State or Corporation
Commission such a proceeding as this. That right is reserved to the
State, which acts for all its citizens.

This proceeding is utterly unauthorized as a legal proceeding. The petition is nothing more than a complaint to the Commission, which it was its duty to investigate and, after investigation, take such action as in its judgment was proper.

In case of an appeal to the courts in such a matter as this, the only authorized parties are the State of North Carolina on relation of the Corporation Commission as plaintiff and the railroad or other corporation as defendant. The statute is plain as to who may appeal, viz., the State and the corporation whose legal rights are affected by the decision. No one else can appeal, because there are, and under the statute can be, no other parties, and the right to appeal is of course confined to parties to the proceeding. This is manifest from section 1075, which reads as follows:

"*Appeal docketed; priority of trial; burden.* The cause shall be entitled 'State of North Carolina on relation of the Corporation Commission against (here insert name of appellant),' and if there are exceptions to any facts found by the Commission, it shall be placed on the civil-issue docket of such court and shall have precedence of other civil actions, and shall be tried under the same rules and regulations as are prescribed for the trial of other civil causes, except that the rates fixed or the decision or determination made by the Commission shall be *prima facie* just and reasonable."

Section 1077 plainly indicates that the right of appeal is confined to the State and the corporation whose legal rights are affected by the Commission's order. Section 1081 also reveals what is meant by the words "any party affected thereby," for it provides, if the corporation "affected" by the order fails to obey, how obedience may be enforced.

There is no decision of this Court contrary to this view. Those cited were appeals by the corporation defendant, whose rights were affected by the Commission's order, and the only parties to the proceeding were the State and the resisting corporation.

That these so-called petitioners are not parties to this proceeding, and have no right to be, has been expressly decided by this Court in *State ex rel. Corporation Commission v. Southern Railway,* 151 N. C., 447. That case is on all-fours with this. B. F. Davis and others filed their complaint with the Corporation Commission, asking the removal of the depot of the Southern Railway at Morganton. The Commission visited Morganton and examined into the matter and ordered the removal of the depot. The railroad company appealed. This Court said: "The motion to dismiss was improperly allowed, as the law required no notice to be served on B. F. Davis, president of the Merchants' Association, as he was no party to the proceeding. It is not claimed that said association is a legal entity; but if it was, it is no party to a

proceeding of this kind. The statute provides that when an appeal is taken from an order of this nature, made by the Corporation Commission, the State shall be the plaintiff, and that the cause shall be docketed, 'State of North Carolina on relation of the Corporation Commission v. the appellant.' "

In the case before us the Commission, after making a personal inspection of the present site and other sites proposed by the petitioners, and after hearing the evidence, found the following facts:

"The present depot at Ansonville is about 1 mile from town, at a point where the line comes to grade. The site insisted upon by the citizens petitioning the removal is near the center of the town and the site originally selected by the railroad company for its depot at Ansonville, but later it was decided to reduce the grade of the road, and in reducing the grade it was necessary to make a cut at this point through the hill, ranging from 5 feet to 12 feet in depth. The approach to the depot at this point would be down grade and into the cut, and there being a curve in the railroad approaching from the north, it would, in the opinion of the Commission, create a dangerous situation. The present site is the nearest point to the town that a *suitable* place could be found for the location of a depot."

After finding these facts, the Commission made further observations as follows:

"The railroad company procured the land at the point where it sought to have the depot established, and it is in evidence that they would have built on it if it had been practicable to do so; but after the grade was reduced, finding that it was not suitable, they abandoned it. Since the present depot has been established, practically all of the building has been done in the direction of the depot, and quite a number of buildings, stores, etc., have been erected adjacent to it, and it would be an injustice to these people to move the depot, even if a suitable place was offered."

From this decision the State of North Carolina has not appealed and is not a party to the proceeding, and the defendant railroad company has not appealed. These petitioners, Redfern and others, have no right to represent the State. That duty is intrusted to the State officers, in this case the Corporation Commission. Therefore, the State, although under the statute an absolutely necessary party, has not been made a party and has not appealed. The complainants, Redfern and others, are not proper parties under the statute, have no *locus standi* in this proceeding and no right to prosecute it, and, therefore, have no right of appeal.

That this is true is manifest from an examination of the legislation creating and governing the Corporation Commission and from the character of the duties it is charged with, as well as the powers conferred upon it.

The Commission is not a judicial court, but an administrative agency of the State, possessing certain *quasi* judicial and legislative powers. *State ex rel. Corporation Commission v. Southern Railway, supra.* It is the agency through which the State undertakes to regulate and control the various corporations doing business within its jurisdiction. The Commission makes freight and passenger rates, rules in regard to baggage, regulates demurrage on cars and storage charges, as well as to establish and locate railroad stations and to require a change of any station, etc. In addition to the multiplied subjects of railroad regulation, it is given general power to control and supervise electric power, light and gas companies, and is clothed with power to fix, establish, and regulate the rates and charges of such persons, companies, or corporations.

The statute contemplates that any person may lay his complaint or grievance before the Commission. It then becomes its duty to investigate the complaint, and, if it is well founded, the Commission will, upon notice, make such order as will correct it, and institute in the name of the State such legal proceedings as will enforce its order. The statute does not contemplate that every complainant may appeal and litigate the matter before the courts in his own name. It must be done in the name of the State upon the relation of the Commission. If every individual complainant is allowed to appeal and bring his grievance before a jury, it would defeat the very purpose for which a Commission was created.

Instead of having a system of rates for the entire State, the rates in each locality would be fixed by the verdict of a jury. Farmers interested in the reduction of rates between certain points on farm products would originate a proceeding before the Commission, and from an adverse decision would bring the subject for determination back to the vicinage, there to be determined by a jury of the same. Persons desiring additional facilities and conveniences within the entire range and scope of railroad operations would resort to the same forum, and the result of it would be that the Commission, the courts, and the railroads would be engulfed in a maze of controversies destructive to the public welfare and ruinous not only to the transportation systems of the State, but to the peace and prosperity of the people.

One of the powers conferred upon the Corporation Commission exclusively is "to require the erection of depot accommodations, and also to require a change in the location of any station. Revisal, 1097, subsecs. 1 and 2. This power is recognized by this Court in *Dewey v. R. R.,* 142 N. C., 403, wherein *Mr. Justice Hoke* says: "But however this may be, the Corporation Commission, the body *authorized and required by law to determine* the matter, after full and due inquiry, have fixed upon this as the proper site." Those words are peculiarly appli-

cable to this case. This method of exerting the power of the State to compel railroads to establish and change their depots is the only feasible and effective method.

It is utterly impracticable to do it through the instrumentalities of courts and juries. Such a matter is foreign to the purposes for which courts were established.

It is contended that section 6 of Laws of 1907, ch. 469, gives the right of appeal to complainants. That section reads as follows: "All persons and corporations affected by this act shall have the same right of appeal from the action of the Corporation Commission under the powers contained in this act as are now provided by law."

This proceeding is not instituted under that statute, for there is nothing in it relative to establishing or changing railroad stations. Nor is it amendatory of the sections of the Revisal that confer such power. The act of 1907 connects the words "persons and corporations" together, because the jurisdiction of the Commission extended to persons as well as corporations.

In certain instances persons may be hailed before the Commission and compelled to obey its decrees. In such cases they are defendants or respondents, and may appeal as well as corporations; and that is what section 6 really means. It is limited to persons and corporations affected by that act of 1907, and does not change the sections of the Revisal regulating the right and method of appeal.

This act confers upon the Commission the power to require railroads to operate additional trains when in their judgment necessary. It will scarcely be contended that under this statute any person can petition the Commission to order additional trains, and, upon their refusal, such person can appeal to the courts and have the matter submitted to a jury. If that could be done, then the same rule would apply to baggage regulations, freight and passenger rates, and to all matters intrusted to the management and control of the Commission. This would completely destroy all uniformity in the system which the State through its Legislature has devised for the control and management of public-service corporations.

There are cases where individuals can apply to the Commission for relief where their personal and property rights are involved, such as overcharges, personal discriminations, and the like. But where the matter is one which does not affect the property or legal rights of one person, but affects a community or locality, or the public generally, the Legislature does not permit any individual person to litigate the matter before the courts, but provides that the State only may do so.

That is the reason the statute expressly provides that the appeal shall be docketed in the name of the State of North Carolina, and the State

will protect before the courts the rights and interests of its citizens generally.

This appeal is not docketed in the name of the State, because that can be done only upon the relation of the Corporation Commission. As it is docketed, "The Corporation Commission, upon complaint of Redfern and others," the Corporation Commission is made the plaintiff appellant. Thus we have the solecism of the Commission appealing from its own decision rendered in favor of this defendant.

Affirmed.

WALKER, J., concurs.
ALLEN, J., concurs in result.

HOKE, J., concurring in the result: Under the broad provisions of the statutes applicable, I am inclined to the opinion that any one who has formally appeared before the Corporation Commission, been so recognized as party to the proceedings, and who has an interest in the questions involved, direct or indirect, may usually appeal from a decision of said Commission adversely affecting such interest; but I concur in the disposition made of the present appeal on the ground that a careful perusal of this record fails to disclose a case in which an appeal should be entertained.

The Corporation Commission has been created and organized chiefly as an administrative agency of the State and charged, among other important duties, with that of looking after and imposing such reasonable rules and regulations on the public-service corporations of the State as may be promotive of the public interests, and their action should not be disturbed unless it is made to appear that, in a given case, it is clearly unreasonable and unjust. The statute, Revisal, sec. 1075, in express terms, provides that, on appeal, "decisions or determinations of the Commission shall be *prima facie* just and reasonable."

In the case on appeal there is no allegation or suggestion that the relevant facts have not all been disclosed, and, on careful consideration of these facts, we find nothing which shows or that would uphold the conclusion that the action of the Commission in the present instance. was either unreasonable or unjust. On the contrary, it appears that they had fully and impartially considered the case, that the decision made by them rests on good and sufficient reason, and, in a cause of this character, that there is no issue of fact or law presented that would require or permit further investigation.

In *Cherry v. Canal Co.,* 140 N. C., pp. 422 and 426, the Court quotes with approval from 2 Am. Pl. and Pr., pp. 499 and 500, as follows: "In 2 A. and E. Enc. Pl. and Pr., 499, we find it stated that 'appellate courts deal with judicial acts, and it would not avail to reverse a ruling or judgment correct on the record, though it may be founded on an

erroneous reason.' And again, in the same volume, at page 500: 'This system of appeals is founded on public policy, and appellate courts will not encourage litigation by reversing judgments for technical, formal, or other objections which the record shows could not have prejudiced the appellant's rights. The decided cases in this and other jurisdictions support this position. In *Butts v. Screws*, 95 N. C., 215, *Ashe, J.*, for the Court, says: "A new trial will not be granted when the action of the trial judge, even if erroneous, could by no possibility injure the appellant." The position has been many times approved in this State, and its proper application to the facts of the present record requires that the judgment of his Honor, dismissing the appeal, should be affirmed.

It may be that he gave a wrong reason for it, but we are dealing here with results, and, in my opinion, on the facts presented, the judgment dismissing the appeal should be affirmed.

CLARK, C. J., dissenting: The Corporation Commission is an administrative and judicial body, the latter functions being conferred by virtue of the Constitution, Art. IV, sec. 12, which provides that "The General Assembly shall have no power to deprive the Judicial Department of power or jurisdiction which rightfully pertains to it as a coordinate department of the Government; but the General Assembly shall allot and distribute that portion of this power and jurisdiction which does not pertain to the Supreme Court among the other courts prescribed in this Constitution, or which may be established by law, in such manner as they may deem best; *provide also a proper system of appeals;* and regulate by law when necessary the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with other provisions of this Constitution."

In accordance with this provision the General Assembly has created courts subordinate to the Supreme Court, some with exclusive criminal jurisdiction in limited areas; others with criminal and civil jurisdiction; and for the redress of complaints against common carriers, whose regulation is now entirely and fully recognized to be a part of the State Government, it has created the Corporation Commission. It has empowered this body to pass upon all complaints as to the regulation of railroads. Recognizing that a body of three men in a subordinate court came within the power prescribed in Art. IV, sec. 12, of the Constitution, the General Assembly provided for a system of appeals as follows:

"Rev., 1074. *Right of; how taken.* From *all decisions or determinations* made by the Corporation Commission *any party affected thereby* shall be entitled to an appeal."

This section further provides that where the exception is to a ruling of law the appeal shall be to the judge at chambers, and if to a finding

of fact, to the Superior Court at term: Revisal, ch. 20, provides for the jurisdiction given to the Corporation Commission and in section 1097 (2) authorizes the Commission "to require a change of any station or the repairing, addition to, or. change of any station-house, by any railroad or other transportation company in order to promote the security, convenience, and the accommodation of the public, and to require the raising or lowering of the track at any crossing when deemed necessary." Revisal, 1054, provides that the Corporation Commission "shall be a *court of record,* known as the Corporation Commission. Such court shall adopt a seal and shall have all the powers and jurisdiction of a court of general jurisdiction . as to all subjects embraced in this chapter." One of the subjects embraced, as above stated, is the power to change the location of a railroad station.

The Constitution authorized the General Assembly to establish courts subordinate to the Supreme Court and prescribe the jurisdiction. It created the Corporation. Commission and gave it jurisdiction in the particulars specified, and provided that "either party affected could appeal," and that such appeal should lie from "all decisions or determinations made by the Corporation Commission." Certainly the Corporation Commission could not appeal from its own decisions, and if "either party" can appeal, such appeal is not restricted to the defendant corporation.

To remove all doubts as to the scope of the powers conferred upon the Corporation Commission and who may appeal, Laws 1907, ch. 469, "To extend and enlarge the powers of the Corporation Commission," provides in section 6 thereof: "All persons and corporations affected by this act shall have the same right of appeal from the action of the Corporation Commission under the powers contained in this act as are now provided by law." One of the facilities required by this act is set out in section 2 thereof: "and to require all transportation and transmission companies to establish and maintain all such public-service. facilities and conveniences as may be reasonable and just."

In accordance with the above authority, the plaintiffs W. D. Redfern, W. A. Smith, and L. L. Little and others filed their proceeding before the Corporation Commission, alleging that the defendant railroad company had established its depot 1 mile outside the town of Ansonville, an old and established center, though the defendant had acquired its rights of way. through that section on the representation and agreement that its depot would be located in the said town; that as a consequence the defendant does not furnish such facilities and convenience to its patrons as are reasonable and just; that the defendant company owns a depot site within the town and that its removal to that point would be to the great convenience of its patrons and the public and furnish them with much better public-service facilities, and that it was necessary, in order

to do this, that the company should provide a depot either upon that site which it now owns or upon some other suitable site in said town.

The defendant railroad company in its reply admitted that it owned a site for a depot in said town, but alleged that the cost of grading would entail a considerable expense, and that it had expressed its willingness to have the plaintiffs' complaint passed upon by the Corporation Commission, which had decided against the plaintiffs' complaint, and asked that the action be dismissed upon the ground that "an appeal does not lie by plaintiffs from an order of the Corporation Commission." The motion was allowed, and this appeal presents that as the sole question.

The defendant's answer ignores the fact that if it is an expense now to remove the station to the point in the town of Ansonville, where the defendant had bought a site in pursuance of its agreement, as the plaintiffs allege, to place a station in that town, the defendant has entailed this cost upon itself, and in matters that concern the public convenience the sole question is not the expense to the defendant, but the convenience of the public must also be considered.

In *Pate v. R. R.*, 122 N. C., 881, where the plaintiffs began a proceeding before the Corporation Commission to require the railroad company to establish a station, the Corporation Commission held that the public interests required the establishment of a station, but that it did not have the power under the act to so authorize (which defect was promptly corrected by the Legislature expressly conferring that power), and the *plaintiffs* appealed directly to the Supreme Court. In that case this Court held: "The appeal will lie in the first instance to the Superior Court, and thence the *party cast* has his appeal, if he so elect, to this Court."

In a later case, *S. v. R. R.*, 161 N. C., 270, where there was an appeal from the Corporation Commission to the Superior Court, on a petition at Rutherfordton against a railroad company in which the plaintiff asked the establishment of a depot, and in the Superior Court judgment was rendered in favor of the defendant, an appeal by the *plaintiffs* to this Court was entertained, *Brown, J.,* writing the opinion which granted the plaintiffs in that case a new trial in the Superior Court.

Revisal, 1054, makes the Corporation Commission a "court of record," and *Brown, J.,* in *Corporation Commission v. R. R.*, 151 N. C., 447, says that that body, while largely an administrative body (which is true), "possesses certain *quasi* judicial and legislative powers."

Revisal, 1068, authorizes such court of record to establish rules of practice, which it has done, and which are set out in Gregory's Supplement under section 1054. These rules prescribe for the filing of the complaint and service of notice of the proceeding "upon the opposite party."

Among the many cases sustaining the jurisdiction of the Corporation Commission to grant relief to parties instituting proceedings before the Commission to compel railroads and other corporations to grant proper facilities to the public are *Express Co. v. R. R.,* 111 N. C., 463; *Mayo v. Tel. Co.,* 112 N. C., 343; *R. R. Commission v. Tel. Co.,* 113 N. C., 213; *Caldwell v. Wilson,* 121 N. C., 425; *Pate v. R. R.,* 122 N. C., 877; and there are many others.

Revisal, 1074, which provides, "From all decisions or determinations made by the Corporation Commission *any party affected thereby* shall be entitled to appeal," further provides: "Before such party shall be allowed to appeal" he shall give notice of appeal and file his exceptions. Further in the same section it is said: "The party appealing" shall file his exceptions, and on exceptions to the law his appeal shall go to the judge of the Superior Court at chambers, and on exceptions to the issues of fact the case shall be sent to the Superior Court at term. In all this there is not only no hint or intimation that the appeal is limited to the railroad company, but, on the contrary, it is expressly provided that either party, whether persons or corporations, shall have the right to appeal.

It is suggested that although the statute makes the Corporation Commission a court of record and gives either party, whether persons or corporations, the right to appeal from all decisions, that it is not feasible to put these statutes into effect because a jury is incompetent to pass upon facts when the Corporation Commission has found them against the plaintiffs; but the railroad companies earnestly contend that an appeal to a jury is very appropriate when the decision is against themselves. It is suggested that if the subject of a controversy was as to a freight rate or putting on an extra train, a jury would be entirely incompetent to find the facts under the supervision of a learned judge, but that when those facts are found by three men they are absolutely correct, unless found against the railroad company.

This, however, is a single and very simple question much easier for determination by a jury than many cases that are submitted to them. In this very matter of the change of a railroad station the point was presented in *S. v. R. R.,* 161 N. C., 270, and when the jury found against the plaintiffs this Court, as above stated, sustained their appeal and directed that a jury trial be given the *plaintiffs* in the Superior Court. In the other two supposed cases in *R. R. Connection Case,* 137 N. C., 1, the defendant railroad thought that a jury was competent to pass upon the facts on its appeal from an order requiring it to put on an extra train to make the Selma connection. The jury in that case rendered their verdict, but the Superior Court judge entered judgment denying the prayer of the plaintiffs that the connection should be made, if necessary, by putting on an extra train. On appeal to this Court that

judgment was reversed and the defendant was ordered to make the connection, and, if necessary, to put on the extra train. On writ of error to the United States Supreme Court the judgment of this Court was affirmed, 206 U. S., 1. In consequence that train is running and the connection is made to this day, to the great accommodation and satisfaction of the public; and they owe it to that jury's verdict.

In the more difficult matter of fixing rates, when the Legislature of North Carolina directly, and not through its subordinate board of three men, fixed the passenger rate at 2 cents the reasonableness of that regulation was tried before a jury in Wake County. *S. v. R. R.,* 145 N. C., 495. The same point was also in litigation in the Federal court, and though it was there first referred to a referee, the issues of fact would have been eliminated from his report and found by a jury as in so many other cases has been done in other States, but that the railroad company withdrew the action on proof that they were making more money than at the old rate of 3¼ cents per mile.

If trial by jury is good and feasible for the railroads to use, as they did in the above cases, to review the decision or determination of the Corporation Commission when deciding upon a complaint to remove a station, or an order to make a railroad connection and put on an extra train if necessary, or to pass upon the reasonableness of rates, then it cannot be too cumbersome for the plaintiffs to have the jury pass upon the same matters, under the direction of the Superior Court judge, with right to appeal to this Court, when the decision of the Corporation Commission, the court of record to whom the decision is committed in the first instance, has been against the plaintiffs instead of against the railroad company.

The right of appeal is either a right or a privilege. If it is a right, the plaintiffs cannot be deprived of it. If it is a privilege, the Constitution of this State, Art. I, sec. 7, forbade discrimination against our own citizens. It provides: "No man or set of men are entitled to exclusive or separate emoluments or *privileges* from the community." The General Assembly has not made such discrimination, but, on the contrary, has provided for an appeal to the Superior Court "from the action of the Commission" (not an appeal by the Commission from themselves) to "all *persons* or corporations." The men who made the Constitution of North Carolina and of the United States did not think that an appeal should be given to the moneyed interests, represented by great aggregations of capital, while denying to our own citizens the right of trial by jury. In the Constitution of the United States the provision was omitted, but at the instance of Mr. Jefferson it was inserted as the Eighth Amendment: "Where the value in controversy shall exceed $30, the right of trial by jury shall be preserved." The promised adoption of

this and other amendments was the condition upon which ratification by the necessary number of States was had to create the Union.

In *Brodnax v. Groom,* 64 N. C., 250, this Court said that we would not attempt to erect this Court into *"a despotism of five men,* which is opposed to the fundamental principles of our Government." We have reiterated this in several cases, among others, in *Supervisors v. Comrs.,* 169 N. C., 548. But to give to the Corporation Commission the absolute and irreviewable refusal of relief when demanded by the private citizen and property owner, while giving to the railroad company every oppor- tunity for the review of any decision of the Corporation Commission against it, would be indeed to create the most perfect and irresponsible *"despotism of three men"* that could be conceived. To prevent this con- struction, the Legislature not only gave the right of appeal to "either party affected," Revisal, 1074, but by above cited Laws 1907, ch. 469, sec. 6, it has given the right to appeal to "all *persons* and corporations affected by the action of the Corporation Commission." The Corpora- tion Commission certainly could not appeal from their own action, and the plaintiffs are *"persons."* They are the "party affected" by the denial of the relief they sought in a matter deeply affecting their pecuniary and their business interests.

There have been many cases known in this State where the high offi- cials of railroads in locating stations have placed them on land privately bought for the personal benefit of said officials and have located the sta- tions at such a distance from a near-by town as to damage the value of property therein while enhancing the value of their own property near the new station. There is no evidence in this record of such fact in this instance. But if in a case of this kind an appeal should lie only in favor of the railroad company, and not for the citizens damaged, there would be much irremediable wrong.

Nothing could make the Corporation Commission more odious to the public than a provision that their decisions should be final and irreview- able against those seeking relief against railroad corporations while giving to the railroad itself the fullest right of appeal to the Superior Court, and then to the Supreme Court—a broad avenue of redress to a privileged class of money and a denial of all appeal to the citizens who have been injured in their property rights and to the community who have been inconvenienced by the refusal of the "public-service facilities and conveniences, as may be reasonable and just," which the statute re- quires shall be given them on application to the Corporation Commis- sion, with right of appeal to either party.

Nowhere in our statutes is the right of appeal given more fully and explicitly to either party, whether persons or corporations, than it is conferred from "all decisions and determinations by the Corporation

Commission" by Revisal, 1074, and the subsequent act of 1907, ch. 369, sec. 6.

The Legislature certainly meant to give our own citizens the same square deal it gave to railroad companies, without discrimination against either. If the construction denying to the citizen the right to appeal equally with the corporation does not meet with public approval, the General Assembly can doubtless yet make the language so plain that no one can misunderstand it.

The mere form of docketing is nothing more than a formality. It is like an action being brought "State on Relation of A.," or the former action, "A. B. to the Use of C. D." The real parties plaintiffs here are the petitioners whose property rights have been damaged by the location of this station, and who are entitled to have a jury pass upon the question, as in the location of the Rutherfordton station, when such jury trial was granted to the railroad company in the location of the station at Rutherfordton, *S. v. R. R.*, 161 N. C., 270, and just as a jury trial was granted to the railroad company in regard to putting on another train in the *Railroad Connection Case*, 137 N. C., 1. Certainly it was never intended by the mere form of docketing to deny the explicit right of appeal given to both parties from every determination or decision of the Commission. Even under the old complex forms of pleading at common law, while a plaintiff might have to choose another forum for his action, he never lost his right to litigate or to appeal. Our Constitution and laws do not reserve the right of appeal and the right of jury trial to corporations and deny them to the citizen in controversies between them. Hence, "this protest, which is also prophecy."